ALEXANDER CONSTANT, Plaintiff in Error, *v.* JOHN J. ABELL, Defendant in Error.

*Landlord and Tenant.*—Where the military authorities took possession of demised premises, and held possession of the same without the consent of the lessee after the expiration of the term : *Held,* that the lessee was not liable for rent of the premises after the expiration of the term although he had received from the Government the rents accruing during the term.

*Error to Buchanan Court of Common Pleas.*

The plaintiff moved the court to give to the jury the following instructions, viz :

1. Plaintiff moves the court to instruct the jury, that if they believe from the evidence that the parties who occupied the property mentioned in plaintiff's petition, before and after the 20th of August, 1862, were the tenants of defendant and paying him rent up to that time ; and, further, that they continued to occupy said property after said 20th day of August, 1862, without any new contract with plaintiff, for two months, then they will find for the plaintiff, and assess his damages at three hundred dollars, with interest from the time such rent was due at the rate of six per cent. per annum.

2. If defendant rented said property to said military authorities of the United States, or State of Missouri, or authorized them to take possession of it, and collected rent from them prior to the 26th day of August, 1862, and up to that time, and paid rent to plaintiff up to that time, then plaintiff had a right to regard the defendant as his tenant ; and a holding over after said 20th of August, 1862, by the parties in possession without any objection on the part of plaintiff, and without any new contract with plaintiff, made said defendant the tenant of plaintiff from year to year, and plaintiff is entitled, in such case, to recover one year's rent with interest as aforesaid.

The court refused the first, but gave the second instruction.

Constant v. Abell.

The defendant moved the court below to instruct the jury as follows, viz. :

1. The defendant moves the court to instruct the jury, that if they believe from the evidence that defendant held the whole house and property, named in the lease in plaintiff's petition set forth, by a joint lease as therein set forth, and that previous to the expiration of said lease the United States and State of Missouri have taken possession without lease of the whole of said house, without lease of defendant, for hospital purposes, and that defendant paid up the rent until the expiration of said lease, and that the State continued to occupy it after said lease expired, and for said time; that the State occupied said house after said lease expired, said Beauvais & Robidoux applied to the State and received from her officer the rent for said house, thereby accepting the State as their tenant, then the law does not presume that defendant held over under said lease for another year, and in such case the jury will find for the defendant.

2. That if the military authorities of the State held said house, after the expiration of the lease named in plaintiff's petition, without the consent of defendant, then he is not liable for holding said premises over after the expiration of said lease, and they will find for the defendant.

3. That if, after the military authorities had held said property, after the termination of said lease, the agent of plaintiff applied to the said authorities for pay for said house, then he cannot hold that defendant had held over for another year, and recover the rent from him.

4. That unless the jury believe from the evidence that defendant did hold the plaintiff's property for a time over and after the expiration of said lease, they will find for defendant.

The court gave all of defendant's instructions, to which plaintiff objected.

*Jones & Townsend,* for plaintiff in error.

The court erred in refusing to give the first instruction

asked on the part of the plaintiff, as also in giving those asked on the part of the defendant.

The lease provides for several payments; that is, so much to Beauvais, so much to Robidoux, and so much to plaintiff. The fact that all are embraced in the same lease, cannot certainly affect the right of each one to sue and recover the amount due to him separately. The ownership of the property was not joint, but each of the three parties owned a distinct part of it, and of different values, as shown by the case; and the original lessees agreed to pay them separately. Defendant took an assignment of the lease with these provisions, and paid the rent to the agent of the plaintiff up to the 20th of August, 1862, for his (plaintiff's) portion of the property. It cannot be said that a payment to the other parties, Beauvais and Robidoux, up to the said 20th of August, of the three hundred dollars a year, due to the plaintiff, would have been good against him; then how can it be said that a payment by the military authorities, made afterwards, can have a different effect? As to what constitutes a several contract, see Robbins v. Ayres, 10 Mo. 538; Sublitt v. Nolan, 5 Mo. 516; 19 Mo. 42.

The second instruction on the part of the defendant is, in effect, that it must be shown, in order to entitle the plaintiff to recover, that defendant consented to the holding over on the part of the military authorities. The defendant was plaintiff's tenant, and was certainly bound to deliver up the property, or offer to do so; he was permitting the Government to occupy the property, and collecting the rent. It was not for plaintiff or his agent to know whether the holding over was with or without the consent of the defendant. Plaintiff had to look to him. The Government was, at the most, an under-tenant, and not liable to plaintiff for rents. (Tay. Land & Ten., § 448.)

The third instruction seems so clearly erroneous, that we can hardly see how it can be insisted upon. The agent of plaintiff was anxious, of course, to collect the rent. It was immaterial as to who should pay it. He demanded it of

plaintiff, was refused, and then tried to get it of Maj. Chew. Here he also failed; Maj. Chew refused to pay; he had no contract to pay rent to plaintiff; the defendant had. How could this contract be changed by the fact of McLaughlin having asked Chew if he would pay, &c.? A tenant cannot resist payment of rent without showing that he was legally evicted, &c. (Tay. Land. & Ten., 372, 375.) As to the effect of holding over after the expiration of the term, see Tay. Land. & Ten., 13 & 35, and authorities there cited.

If a tenant holds over after the expiration of the term, the landlord may elect to treat him as a tenant or a trespasser; if he fails to proceed against him as a trespasser, a new tenancy arises, by implication, upon the same terms as the old. (Tay. Land. & Ten., § 22.)

*H. M. & A. H. Vories*, for defendant in error.

The lease to defendant's assignor was a lease made by Robidoux, Beauvais & Constant, by which they, by one entire contract, rented to him an entire house. After the lease was out, two of the parties received their pay from the Government, and recognized the Government agents as tenants; hence there could be no presumption that the defendant held over the other small and useless part of the house. If there is a holding over, it cannot be as to part of the contract, but the whole lease must be renewed.

Again, at the time that Robidoux and Beauvais applied to the Government for the rent for the house, after the termination of the lease to defendant, they received all of the pay that the Government would give for the whole building, as it refused to issue more than one voucher for all, so that plaintiff should have called upon them for the rent of his part of the house. It was impossible for the defendant to have held over under the lease, as more than two-thirds of the house and premises were received by Robidoux & Beauvais, and rent received therefor from others; hence the judgment being for the right party, it will not be reversed.

Constant v. Abell.

HOLMES, Judge, delivered the opinion of the court.

The plaintiff sued for a year's rent of three hundred dollars upon an implied new leasing by the defendant for another year, as a tenant holding over after the expiration of his written lease, which expired on the 20th day of August, 1862. The answer denied any holding over or any new leasing for another year, and alleged for a further defence, that on the 14th day of January, 1862, the military authorities of the Government took possession and control of the leased premises, and held the same for the uses of a hospital until the 15th day of December, 1862, when the possession was turned over to Robidoux & Beauvais, lessees in the same lease of other parts of the same premises, held severally by the terms of the lease ; that the defendant left the premises ready for the lessor to take possession of them, but that he was not in the State, and had no agent authorized to take possession for him ; that the military officers were ready and willing to pay for the occupancy thereof, and.that since they took possession in January, 1862, he had had no control over the premises.

The evidence tended to support the answer. And it further appeared that the military officers paid the rent of the whole premises to Robidoux & Beauvais on one voucher, and that the defendant had received his portion of it from them until the expiration of his lease, the Government continuing to occupy as before, after that time. It appeared that an agent of the plaintiff attended to his business generally in his absence ; that the defendant had paid his part of the rent due the lessor up to the 20th of August, 1862, when his lease expired, and refused to pay afterwards ; that the agent did not object to the occupancy of the military authorities, and when the defendant refused to pay, he called on Maj. Chew, quartermaster, for the rent, but failed to get it from the Government for the reason that they settled with Robidoux & Beauvais, and would not make but one voucher in the matter, and did not know him in the business. It was

in evidence, also, that the military authorities took possession of such property as they needed for their purposes, whether the owners consented or not.

The plaintiff moved the court to instruct the jury to the effect, that if the same parties, tenants of the defendant, paying rent to him, occupied, after as before the expiration of the lease, for two months without any new contract with the plaintiff, they would find for the plaintiff the year's rent with interest, and the court refused. The court then gave four instructions for the defendant, to which the plaintiff excepted, and thereupon took a non-suit with leave, and the case comes up by writ of error.

The case is attended with some difficulties, owing to the peculiar circumstances. A lease for a term of years, expires by effluxion of time at the last moment of the last day of the term. The lessor knows this as well as the lessee, and no notice is required to apprise him that the leased premises will be vacated on that day; and if the lessee quit possession, the lessor has nothing to do but enter and take possession. Even when there is a tenancy by the year under a lease which gives the tenant power to determine it on giving notice, and he gives the notice and quits possession, no action can be sustained against him for use and occupation afterwards. (Archb. Land. & Ten., 147.) But if there be an actual holding over, there is no question but a new leasing for another year, if rent be paid and accepted, or a tenancy at will, if not, at the same rent, will be implied; but such holding over is a matter of fact to be proved by other evidence than the lease. (Tay. Land. & Ten., § 58.) And when there is no payment and acceptance of rent after the expiration of the term, if the tenant hold over but for a short period, without any act to make him a trespasser, he is not at liberty to deny that he is at least a tenant at will or by sufferance. (*Id.*, § 22.) When the lease expires, the tenant ought peaceably and quietly to vacate and surrender the premises; and if he has underlet the possession to another, he must get him out, otherwise he is not in a position to give

up to the landlord that full possession to which he is enti-
tled. But even if he do not remove the under-tenant, he is
not thereby rendered liable for another whole year's rent, nor
is a tenancy from year to year created, but only a tenancy
at will, and he will be liable only for the period of the actual
holding over. (Tay. Land. & Ten., § 524.) The holding
over may be by an under-tenant, but then there must be
some privity of contract between the lessee and such per-
son that will make him an under-tenant in order that it shall
become a holding over by the lessee.

It is said that an action for use and occupation can be
maintained against the tenant even for the time his under-
tenant may have holden over against his consent (Archb.
Land. & Ten., 147); but this supposes that there is some
privity of contract between them which makes the one the
under-tenant of the other. Here the military authorities
took possession of these premises without any contract with
the lessee and against his consent. They paid the whole
rent to Robidoux & Beauvais on one voucher, and the de-
fendant merely received his portion of it from them until
his lease expired. He then vacated the premises as far as it
was in his power to do it, and ceased any longer to receive
any part of the rent collected by them from the Government.
Such receipt of rent may be considered as a recognition to
some extent of the actual occupation of the military authori-
ties as tenants at will or by sufferance; but that circum-
stance alone can hardly be sufficient evidence of a holding
over for another year, or any such tenancy by contract as
would make them his under-tenant.

If the military authorities held over without his consent,
they also came in against his consent, and without any con-
tract with him. He suffered them to remain without any
attempt at eviction, but continued to pay his rent to his les-
sor as he was bound to do, notwithstanding such eviction by
a stranger, until the expiration of his lease, in the same man-
ner as if his possession had not been interfered with. They
were intruders upon him, and he left them intruders upon

the landlord. If they failed to pay rent for the use and occupation, to the satisfaction of the owner, he could recover the possession on a landlord's warrant without any inquiry whether they came in as under-tenants, or as mere trespassers (Willi v. Peters, 11 Mo. 395; Shepherd v. Martin, 31 Mo. 492), unless prevented by the action of the military authority for which this defendant was not responsible.

After the expiration of the lease, the military authorities paid the whole rent, it seems, to Robidoux & Beauvais, as before; and it does not appear why the plaintiff's agent did not call on them as the defendant had done during his term. But he called upon the quartermaster, who refused to pay him, because he knew only Robidoux & Beauvais in the matter, and would make but one voucher. This shows, at least, that he was willing to recognize the occupancy of the military officers, and to accept rent from them, rather as tenants of his own than as intruders.

We think the facts proved did not warrant the conclusion that a tenancy from year to year, or holding over for another year by the defendant, had arisen, or could be legally implied, and that he was clearly not liable for a whole year's rent; nor are we satisfied that the military authorities had become the under-tenants of the defendant in such a way as to make him responsible as upon a holding over, even as a tenant at will, for the period of the actual occupation. The relation of landlord and tenant will not be inferred, if the position of the parties can be referred to any other distinct cause. (Tay. Land. & Ten., § 25.) And the whole difficulty here is rather to be attributed to the action of the military officers, than to any holding over or any default on the part of the defendant.

For these reasons we are of opinion that the instruction refused for the plaintiff was correctly refused, and that even the second was erroneously given. And taking the instructions given for the defendant in connection with the evidence on which they were predicated, though the second one be

liable to objections as being rather too broad, on the whole, we see no good cause for reversing the judgment.

The other judges concurring, the judgment will be affirmed.