JOHN B. WILGUS, Respondent, *v.* CHARLES R. LEWIS ET
AL., Appellants.

### February 17, 1880.

1. Where one holds over under a written lease for a year, the payment by him and the acceptance by the lessor of rent at the lease rate implies a new leasing by oral contract on the original terms.

2. In such a case, where the building is in a city, the tenancy is from month to month, to terminate which the notice must either specify the exact day on which the month expires, or state generally that the tenancy will terminate in one month from the next rent-day.

3. A provision in the lease that for every day the tenant holds over he shall pay double rent, is waived by the payment and acceptance of rent according to the old terms.

4. Incoming partners of the original lessee of the premises occupied for the business of the firm are bound by the terms of the lease.

APPEAL from the St. Louis Circuit Court.

*Affirmed.*

CHARLES T. NOLAND, for the appellants : The lease provided for a holding over, and that agreement not being annulled, it stands, and the law will not imply any other contract. — *Christy* v. *Price*, 7 Mo. 430 ; *Stellings* v. *Sappington*, 8 Mo. 118 ; *Chambers* v. *King*, 8 Mo. 517 ; *Brown* v. *Gauss*, 10 Mo. 265. The appellants were not tenants from month to month, and notice to quit was not necessary. — *Deaver* v. *Randall*, 5 Mo. App. 297. The condition as to holding over could not be waived. — *Walker* v. *Engler*, 30 Mo. 130 ; *Weil* v. *Tyler*, 38 Mo. 547 ; 1 Pars. on Con. 475.

THOMAS K. SKINKER, for the respondent : By holding over and paying rent at the rate specified in the lease, the lessee became the lessor's tenant for another year on the same terms. — *Hunt* v. *Bailey*, 39 Mo. 266 ; *Finney* v. *St. Louis*, 39 Mo. 180 ; *Constant* v. *Abell*, 36 Mo. 179 ; *Quinette* v. *Carpenter*, 35 Mo. 502 ; *Insurance & Law Building Co.* v. *National Bank*, Sup. Ct. Mo. (MS.) ;

*Railroad Co.* v. *Ludwig*, 6 Mo. App. 584; *Bircher* v. *Parker*, 40 Mo. 118; *Bacon* v. *Brown*, 9 Conn. 334; *Jackson* v. *Salmon*, 4 Wend. 327; *Abeel* v. *Radcliff*, 15 Johns. 505. Incoming partners are bound by the terms of the lease. — *Hilsby* v. *Mears*, 5 Barn. & Cress. 504; *Jackson* v. *Salmon*, 4 Wend. 327. If they were tenants from month to month, then a notice of one month was requisite. The notice given was not valid for this purpose, because it named an intermediate day, instead of the last day of the month, for surrendering possession. Such a notice is a nullity. — *Sanford* v. *Harvey*, 11 Cush. 93; *Prescott* v. *Elm*, 7 Cush. 346; 2 Archb. N. P. 376, 377 (vol. 48, Law Lib.); Comyn's L. & T. *304, 305 (vol. 4, Law Lib. 171); Taylor's L. & T. (7th ed.), sects. 475, 476; *Prickett* v. *Ritter*, 17 Ill. 98.

BAKEWELL, J., delivered the opinion of the court.

This action is for rent of a building in St. Louis during the month of June, 1878. There was a finding and judgment for plaintiff.

It appears from the pleadings and evidence that plaintiff, by written lease, demised the premises in question to defendant Lewis and his then copartners in business, for a term of one year from January 1, 1877, at the yearly rent of $4,500, payable in monthly instalments. On July 21, 1877, the new firm was formed, consisting of defendant Lewis, one of the original lessees, and his present co-defendants, who remained in possession after the expiration of the lease, and until May 15, 1878, when they left the premises and tendered the keys to plaintiff's agent, who refused to receive them. The lease contained a provision that "the lessees, and all holding under them, engage to pay the rent reserved, and double rent for every day they, or any one else in their name, shall hold on to the whole or any part of said tenement after the expiration of the lease."

At the expiration of the term, defendants applied to Car-

penter, the agent of plaintiff, for a reduction of rent. He offered to reduce the rent to $4,000 if defendant would take a lease for a year. This they declined. Defendants then offered to take a lease for a year at $3,600. This Carpenter declined. Whilst these propositions were being exchanged, defendants remained in possession without paying rent, Carpenter telling defendants that the lease required them to pay at the rate at which they had paid up to January, unless they took a new lease. On April 13th, Lewis sent for Carpenter to come and get his rent. At this interview, Carpenter asked if the defendants would accept the premises at $3,600, as they had suggested. Lewis said it was too late, that they would vacate the premises on April 15th, and serve him with notice to that effect. Carpenter told defendants that he could not wait, that he was going to his office, and notice might be served on him there. Defendants on the same day served a notice to quit on May 15th. On the same day defendants paid their rent to April 1st, taking three receipts for the same — one for each month, for $375 each. The bill was first made out for three months' rent, but was changed at the suggestion of Lewis, who said that the acceptance of such a receipt might be an admission of a quarterly tenancy. On May 2, defendants paid the April rent, $375. On the 15th they left the premises, and on the next day they tendered $375 for the May rent, asking a receipt in full. The tender was refused. Defendants then wrote to plaintiff, stating that his agent refused to recognize their notice of April 13th, and although the rent had been tendered for May, claimed that defendants were liable for further rent; and asking his interference. Afterwards, on May 30th, defendants, by advice of counsel, served Carpenter with a new notice, in which they offer to pay the rent for May, refer to their former notice, and claim that it is good; and say that if the tenancy is not, by means of the former notice, terminated on May 31st, it is their intention by this notice to terminate the tenancy in one

month from the day that the May rent is due — that is, on June 30, 1878. On the same day defendants paid $375 under protest, taking a receipt for the month ending May 31st. Carpenter at this time refused to sign a receipt in full of all demands, and all further communications about the matter between the parties ceased with the demand, on July 1st, of the June rent, which was not paid, and for which this suit was brought.

Notwithstanding the dissimilarity of the statutes, the English rule has been adopted in Missouri; and it is quite settled with us, by a uniform course of decisions, that a verbal permission to hold over under a written lease creates a tenancy from year to year. *Hammon* v. *Douglas*, 50 Mo. 434. It is needless to examine whether the assumption of any such permission in this case is inconsistent with the testimony as to a holding over pending the negotiations for a new lease. If there was such permission, there was a tenancy from year to year. If there was not, and it is held that there was a continuance in possession under an agreement for an indefinite time, pending a treaty for a new lease, and that perhaps this created a tenancy at will, the effect is the same. If there was a tenancy from year to year, as the building was in the city, this, by the statute, is converted into a tenancy from month to month, and a month's notice is required; whilst to terminate a tenancy at will a month's notice is also required. *Hammon* v. *Douglas, supra;* Wag. Stats. 879, sect. 13. In either case, to terminate the tenancy, when the rent is payable monthly, the month's notice which must be given must either specify the exact day on which the next month expires, or state generally that the tenancy will be terminated in one month from next rent-day. *Sanford* v. *Harvey*, 11 Cush. 93. The first notice, for May 15th (a day in the middle of the next month), did not comply with these conditions, was ineffectual, and plaintiff might safely disregard it.

It is, however, contended that the legitimate inference

from the evidence is, that on April 13th plaintiff's agent agreed with defendants for a letting to May 15th. Carpenter swears positively that there was no such agreement. We see no evidence of the acceptance on Carpenter's part of any such proposition. Even if there was some evidence of such a letting, this was for the trier of the fact. The finding was against it, and there is an end.

The serious contention would seem to be, however, that plaintiffs were in under the express provision of the lease for holding over after the expiration of the term at double rent for every day. The conduct of the parties is fatal to this theory. Certainly, the lessor, whilst permitting the parties to remain in possession pending negotiations for a new lease, would not be permitted to hold them for double rent up to the time when the negotiations came to an end. It is manifest that such was not the intention of the parties. Rent was tendered and accepted under the terms of the old lease. In *Deaver* v. *Randall*, 5 Mo. App. 297, the lessor, from the first, refused to consent to a continuance of the tenancy on any terms; and the evidence does not show in that case that the rent paid for the month during a portion of which defendant held over, was paid at the single or double rate. The tenant remained in for twenty-nine days after the expiration of the lease, and then left, being, in the absence of any contrary agreement, liable for double rent during those days, according to the written agreement, and for no more. In the present case the tenant did not elect to remain under the terms of the contract for payment of double rent, but by the continued payment of rent after the expiration of the lease, at the monthly rate reserved, in the absence of any contrary agreement, he is presumed to have been in under an implied oral contract on the terms of the original lease, and, under the modification of the common-law rule introduced by our statute, as a tenant from month to month. The act of the tenants in paying rent according to the old terms was as

forcible as any words could be to declare that they were not holding over under the contract to pay double rent. Where there is a holding over under a written lease for a year, in the absence of proof of a contrary agreement, if rent be paid and accepted on the old terms, the law implies a new leasing by oral contract on the original terms. *Constant* v. *Abell*, 36 Mo. 179 ; 39 Mo. 180 ; 40 Mo. 120. The notification of Carpenter, that unless they took a new lease they must pay according to the old terms, and the notice of the tenants fixing a definite time at which they would quit, were, of themselves, enough to show a complete waiver of the provisions of the contract as to double rent.

That the defendants, the copartners of Lewis, the original lessee, as incoming partners, were bound by the terms of the old lease, seems clear. *Jackson* v. *Salmon*, 4 Wend. 327 ; *Hilsby* v. *Mears*, 5 Barn. & Cress. 504. But no question as to that was raised either in the trial court or here.

The judgment is affirmed. Judge LEWIS is absent ; Judge HAYDEN concurs.