**WILLIBALD SCHAEFER CO.**

v.

**BLANTON CO.**

No. 28793.

St. Louis Court of Appeals.

Missouri.

Feb. 16, 1954.

Not to be reported in State Reports.

Gilbert Weiss and Rodney Weiss, St. Louis, for appellant.

Fordyce, Mayne, Hartman, Renard & Stribling and Joseph R. Long, St. Louis, for respondent.

BENNICK, Judge.

This is an action for damages for breach of contract. Suit was instituted in September, 1942, but by reason of the nonaction of the parties was not brought to trial until February, 1952.

Plaintiff, Willibald Schaefer Company, and defendant, the Blanton Company, are local corporations engaged in the business of buying, selling, and refining both vegetable and animal oils. A third corporation engaged in the same general business is the Western Vegetable Oils Company, which has its place of business in San Francisco, California.

On September 26, 1941, plaintiff entered into a written contract with the Western Vegetable Oils Company for the purchase of ten tank cars of crude coconut oil, five of which were to be shipped during January, 1942, and the remaining five during February, 1942, with specific shipping instructions to follow.

While shipment of the ten cars was guaranteed by the Western Vegetable Oils Company, the contract contained a condition excusing the shipper from responsibility for delay or nondelivery resulting, among other things, from restrictions imposed by any governmental authority.

After the execution of such contract, and on December 12, 1941, plaintiff entered into a written contract for the resale of such ten tank cars of crude coconut oil to defendant, with shipment to be made by the Western Vegetable Oils Company in accordance with such company's contract with plaintiff. The contract specifically mentioned that five tank cars were to be shipped in January, 1942, and five in February, 1942, with shipment guaranteed, but did not recite the condition incorporated in plaintiff's contract with the Western Vegetable Oils Company excusing liability for nondelivery resulting from restrictions imposed by any governmental authority. Although it was agreed that shipment was to be made by the Western Vegetable Oils Company in accordance with such company's contract with plaintiff, a copy of such contract was neither attached to the contract between plaintiff and defendant, nor was it otherwise referred to than in the manner indicated.

At the time of its entry into the contract with plaintiff, defendant was already under contract to sell various amounts of refined oil to other companies at their respective addresses and intended to allocate five of the tank cars to such use. On December 12, 1941, the same day upon which it entered into its contract with plaintiff, it agreed to sell and deliver the remaining five tank cars to still another customer, with delivery to be made in February, 1942. Defendant's purpose in purchasing the crude coconut oil was to refine the same at its plant in St.

Louis and then resell the oil to its customers in an edible condition.

The Western Vegetable Oils Company was duly advised by plaintiff that the ten tank cars of oil contracted for on September 26, 1941, had been resold to defendant; and during the period from January 12, 1942, to February 9, 1942, five of such cars were received and paid for by defendant, and are not in dispute in the present case. On the contrary, the only dispute is over the nondelivery of the remaining five cars, shipment of which was withheld by the Western Vegetable Oils Company due to a controversy between the several companies over the effect of certain governmental regulations respecting priority status and the use for which the oil was intended.

On August 28, 1941, a month before the execution of the contract between plaintiff and the Western Vegetable Oils Company, the federal government, through its Office of Production Management, had issued Priority Regulation No. 1 (6 F.R. 4489), which provided, in substance, that defense orders for any material were to be accepted and filled in preference to any other contracts or purchase orders for such material, even if such acceptance would render impossible or result in deferment of deliveries under nondefense orders previously accepted.

As a matter of fact, not only was defendant to receive the ten cars of oil that plaintiff had purchased from the Western Vegetable Oils Company under its contract of September 26, 1941, but it had also dealt directly with the Western Vegetable Oils Company on other purchases, and had had extensive correspondence with such company in relation to the substitution in some instances of babassu oil for coconut oil under contracts for January, 1942, delivery.

On February 10, 1942, the Western Vegetable Oils Company advised defendant that it would be in a position to ship five cars of coconut oil at the end of the month, and inquired if such cars might not be applied to the performance of its contract with plaintiff. The suggestion was agreed to, subject to the condition that defendant should supply the empty cars to receive the oil, which was done, with all five cars leaving St. Louis for San Francisco between February 10th and February 14th.

On February 24, 1942, the Western Vegetable Oils Company gave the first indication in a letter to plaintiff that it was not permitted to dispose of coconut oil unless it was given a release by the Office of Production Management, which in some instances had only been forthcoming where the oil was to be used in the manufacture of soap and glycerin.

On February 25, 1942, the Western Vegetable Oils Company wired defendant that it expected to be called upon to inform the Office of Production Management of the use to be made of coconut oil sold defendant under a contract other than the one involved in this proceeding, and that it desired immediate advice from defendant upon the question of intended use. On the following day the Western Vegetable Oils Company again wired defendant to the same effect, but in greater detail; and on February 28, 1942, defendant wired the Western Vegetable Oils Company that inasmuch as it had already substituted other oils for its edible trade, it would certify that any coconut oil thereafter shipped it would be used for soap and glycerin manufacture. However on the same day it also wrote Western Vegetable Oils Company expressing the hope that such company would substitute babassu oil on the shipment of five cars under its contract with plaintiff.

Additional correspondence followed on the part of both plaintiff and defendant demanding that the Western Vegetable Oils Company make shipment under its contract with plaintiff, but all to no avail; and so the matter stood on March 20, 1942, when the War Production Board (the successor to the Office of Production Management) issued General Preference Order M-60 (7 F.R. 2185), by which it prohibited the further use of either coconut oil or babassu oil in any process in which glycerin was not produced.

Plaintiff had been equally insistent with defendant that the Western Vegetable Oils Company should make delivery of the final

five cars in accordance with its contract, and on March 23, 1942, the Western Vegetable Oils Company wrote plaintiff advising that it had at all times had the oils on hand to make delivery under its contract, but that it would not make any shipment until it received releases from the War Production Board.

On April 1, 1942, defendant wrote plaintiff that in view of the fact that the five cars for February shipment had not been shipped in keeping with the guarantee contained in its contract with plaintiff, it would be unable to handle or receive the shipment.

In reply plaintiff wrote defendant on April 8, 1942, that unless defendant supplied the necessary certificate of priority which the Western Vegetable Oils Company had been demanding, it would consider the contract breached by defendant.

After some correspondence between plaintiff and the Western Vegetable Oils Company, plaintiff resold the five cars of oil to such company at the then ceiling price, and received from such company the amount of the excess of the repurchase price over the original selling price.

In its petition plaintiff alleged the sale of the ten cars of oil to defendant under their contract of December 12, 1941; defendant's alleged refusal to accept the five cars for February, 1942, shipment; and plaintiff's resulting damage in the amount of $7,110, for which sum plaintiff prayed judgment against defendant.

Defendant answered by a general denial, coupled with a counterclaim setting up that under the contract of December 12, 1941, plaintiff had guaranteed shipment of the ten cars of oil, but had failed and neglected to deliver the five cars for February, 1942, shipment. Defendant then alleged that upon entering into the contract with plaintiff, it had immediately contracted to sell the oil to certain of its customers after the same had been refined; and that by reason of plaintiff's failure to deliver the last five cars of oil it had been damaged in the amount of $2,250, for which sum it prayed judgment against plaintiff.

The case was tried without a jury upon an agreed statement of facts, and resulted in a finding for defendant upon plaintiff's claim, and also for defendant upon its counterclaim for $2,250, the amount sued for. Judgment was entered in accordance with such findings; and after an unavailing motion for a new trial, plaintiff gave notice of appeal, and by subsequent successive steps has caused the case to be transferred to this court for our review.

In cases such as this where the judgment disposes of both a claim and a counterclaim, there is frequently a question of where appellate jurisdiction lies, depending upon what constitutes the amount in dispute between the parties.

■ If the case is one where there can be simultaneous recoveries by the plaintiff on his claim and by the defendant on his counterclaim, and the appealing party complains of the judgment on both features of the case, the amount in dispute for the purpose of determining appellate jurisdiction will be the combined amounts still in controversy on both the claim and the counterclaim. Schmidt v. Morival Farms, Mo. Sup., 240 S.W.2d 952; Id., Mo.App., 232 S.W.2d 215. But if the situation is such that there can be no simultaneous recoveries by both the plaintiff and the defendant, then the amount in dispute will be the amount recovered on either the claim or the counterclaim as the case may be, and not the combined amounts which would be left in controversy were the case of that character where simultaneous recoveries would not be inconsistent. Jameson v. Fox, Mo.Sup., 260 S.W.2d 507; Hoefel v. Hammel, Mo.App., 228 S.W.2d 402.

The case at bar falls squarely within the latter category. Each party is claiming that it was the other who breached the contract. A finding in favor of either party would therefore require a finding against the other, so that simultaneous recoveries by both plaintiff and defendant would be impossible. In this situation the issues arising both on plaintiff's claim and on defendant's counterclaim have been merged in and resolved by the finding in defendant's

favor on its counterclaim, which, being for the sum of $2,250, brings the case within this court's appellate jurisdiction. Const. of 1945, Art. V, Secs. 3, 13, V.A.M.S.

Having in mind that the scope of our review extends to both the law and the evidence as in suits of an equitable nature, plaintiff insists that we should hold the lower court in error for having failed to find that defendant's own acts and omissions had been responsible for the nondelivery of the last five cars of oil. If it should be the fact that defendant's own conduct had been responsible for such nondelivery, then of course it would follow that defendant could not now take advantage of its own conduct, either to escape liability to plaintiff on plaintiff's claim, or as a basis for the recovery of damages from plaintiff by way of counterclaim upon the mere fact of the latter's nonperformance. Simons v. Schibsby, Mo.App., 238 S.W. 811; Dement v. McNail, Mo.App., 4 S.W.2d 831; 17 C.J.S., Contracts, § 468.

What plaintiff has in mind is defendant's alleged failure to furnish what plaintiff considered adequate information respecting priority status and the use for which the oils were intended, which information plaintiff claims was essential under governmental regulations before the Western Vegetable Oils Company would have been authorized to make the shipments now in question.

The whole question resolves itself into one of the effect of Priority Regulation No. 1, which was admittedly in force, not only at the time of the execution of the contract between plaintiff and defendant on December 12, 1941, but also at the time of the execution of the contract between plaintiff and the Western Vegetable Oils Company on September 26, 1941.

Defendant concedes that if the effect of Priority Regulation No. 1 was to prevent plaintiff from making delivery of the five cars of oil to defendant, then such contract was a nullity, and neither party could recover damages from the other for its breach. Furthermore defendant makes this concession regardless of the fact that its contract with plaintiff contained no such express provision as was embodied in the contract between plaintiff and the Western Vegetable Oils Company excusing the latter from liability for delay or nondelivery resulting from restrictions imposed by any governmental authority.

The fact is, however, that there was nothing in Priority Regulation No. 1 which prevented plaintiff from making delivery of the five cars of oil to defendant. By this we mean that there was no requirement in such regulation that a purchaser of material should secure a Preference Rating Certificate as an absolute condition to the right of the seller to make delivery of the material. It is true that if the purchaser did not secure such a certificate, he ran the risk of having his order either rejected or deferred in the event the seller did not have enough of the material on hand to accept and fill any previous orders, but unless such situation obtained, the regulation had no effect upon orders previously accepted. In this case the evidence disclosed, and it is admitted in the brief, that the Western Vegetable Oils Company had at all times had oil on hand to make delivery under its contract with plaintiff, and there was never the least suggestion that shipment was being deferred because it lacked oil to fill orders having priority ratings. The regulation did not prohibit the performance of the contract, and it was therefore no excuse for nonperformance that some governmental agency may have been requesting the establishment of a priority rating that it had no legal right to command. Ellis Gray Milling Co. v. Sheppard, 359 Mo. 505, 222 S.W.2d 742.

The same conclusion necessarily follows as regards plaintiff's point that under the contract between the parties it was defendant's duty to accept delayed shipment if the delay was due either directly or indirectly to restrictions imposed by governmental authorities.

Plaintiff also insists that the lower court erred in failing to find that defendant had in any event waived the time for delivery specified in the contract, and thereafter

could only terminate the contract after giving notice of the proposed termination and a reasonable time to plaintiff in which to complete delivery.

It is of course conceded that plaintiff did not make delivery of the five cars of oil scheduled for delivery in February, 1942; and what plaintiff is now contending is that inasmuch as defendant did not immediately declare the contract breached at the end of February, 1942, but was willing to accept performance of one kind or another during March, 1942, it thereby waived the breach and was required to accept shipment at any time thereafter unless it gave notice of its intention to terminate the contract within a reasonable time after date of notice.

The stipulation upon which the case was submitted contained all the facts relating to the matter, and the parties voluntarily joined issue upon the question of waiver in the trial of the case in the court below.

 It is elementary that for a waiver to occur, there must be an intentional relinquishment of a known right; and if there has been no actual intention to waive, there can be no waiver unless the one party has acted in such a manner as to be estopped from denying waiver where he has misled the other party to his prejudice. A mere forbearance for a reasonable time in the enforcement of an existing right is not in and of itself sufficient to constitute a waiver.

It is true that in this case, after plaintiff had failed to perform within the time that shipment had been guaranteed, defendant continued its efforts to get the coconut oil or a substitute during the month of March without avail. However this was a mere forbearance and not an unequivocal abandonment of its right to claim a breach; and when delivery was not forthcoming, defendant was entitled to terminate the contract as it did by its letter of April first.

Since plaintiff could not recover on its claim, the only remaining question is whether defendant was entitled to have judgment on its counterclaim. The answer follows logically from what has already been decided regarding the lack of legal excuse for plaintiff's nonperformance. Having breached the contract by failing to ship the five cars of oil as it had agreed to do, plaintiff became liable to defendant for the damages the latter sustained by reason of its inability to fulfill its contracts with its own customer for the resale of the oil after the same had been refined.

It follows that the judgment rendered by the circuit court should be affirmed, and it is so ordered.

ANDERSON, P. J., and RUDDY, J., concur.