E. F. MILLS and Flora Mills, Appellants,

v.

D. I. TAYLOR, Respondent.

No. 43845.

Supreme Court of Missouri.

Division No. 1.

Sept. 13, 1954.

Justin Ruark, Neosho, James Paul, James Tatum, Pineville, for appellants.

Robert E. Yocom, Springfield, for respondent.

DALTON, Presiding Judge.

Action in equity on the theory of equitable estoppel to establish and have adjudged, as a "commonly owned appurtenance to" plaintiffs' real estate, the existence of a permanent easement for passage over a small area in the corner of defendant's real estate and for an injunction to restrain defendant from interfering with plaintiffs' use of the easement. Defendant denied the existence of the easement, but admitted that plaintiffs owned the adjoining lands and admitted that the driveway, as described in the petition, had existed for a number of years immediately prior to the filing of the petition, but less than ten years Defendant also filed several counterclaims seeking damages and rents. The trial court found the issues for defendant and against plaintiffs on plaintiffs' petition and for plaintiffs and against defendant on defendant's counterclaims. Only the plaintiffs have appealed.

■ This court has jurisdiction of the appeal, since title to real estate is directly involved. Article V, § 3, Constitution of Missouri 1945, V.A.M.S.; Chapman v. Schearf, 360 Mo. 551, 229 S.W.2d 552, 553. Compare Gibson v. Sharp, Mo.Sup., 270 S.W.2d 721.

Plaintiffs and defendant are adjoining owners of real estate on the south side of State Highway No. 44 in McDonald County. The easement sought to be established is over a triangular tract in the northeast corner of defendant's land, which tract measures 12 feet along the right of way line of the state highway and 12 feet along the division line between the two properties. These distances are along the legs of the right angle triangle. For several years, this small triangular tract has been used as a part of the driveway from the highway into the west side of plaintiffs' gasoline filling station. When defendant threatened to extend his fence to include the property in question, the plaintiffs instituted this action in December 1951.

In 1946 both properties were unimproved and were owned by John Wallender. Defendant now owns the corner lot which fronts 80 feet on the south side of Highway No. 44 and has a depth of 210 feet on the east side of an intersecting highway. Plaintiffs own the next adjoining lot on the east, which fronts 55 feet on the south side of Highway No. 44 and has a depth of 210 feet. Plaintiffs acquired their lot in December 1948 from Stokie Peck, who had purchased from John Wallender's son. Defendant acquired his lot from James Chaffin and wife, grantees of John Wallender and wife. When defendant acquired his lot it had a building on it that had been used by John Wallender as a garage and, subsequently, by Chaffin as a feed store. It stood some distance south of the right of way line of the highway and about 14 feet west of defendant's east line. Defendant remodeled the building into a residence. While this property was being used for garage purposes "a long 14 inch culvert" was put across the right of way ditch on the south side of the highway. This roadside ditch, 12 to 16 inches in depth, also extend-

ed in front of plaintiffs' property. It had also been bridged to the east of plaintiffs' filling station in order to provide for access from the highway. When plaintiffs acquired their lot there was a residence on the rear of the lot and another building on the front of the lot, the latter building being used as a country store. The concrete island for the filling station pumps was located between the store building and the front line of the lot. The ends of the island were about 21½ feet from the respective sides of plaintiffs' lot. The gravel drive, which extended on each side of the filling station pumps, had entrances on the east and on the west from the highway. Plaintiffs' store building was some 13 feet east of their west line. A small moveable icehouse was located on this area between the store building and defendant's property line. After plaintiffs acquired their property, the icehouse was moved west onto defendant's property and left facing north on the gravel drive. Plaintiffs then built an extension about 12 feet wide and 30 feet long on the west side of their store building. This "shed-room" was built "to house the water pump, and for a feed room, general storage room and for a garage."

In 1947, while John Wallender and his son were owners of the adjoining properties, the father operating a garage on the corner lot and the son a country store on the adjacent lot, the area between the improvements and the highway line was graveled and was used by the customers of both parties. The same was true subsequently when the Chaffins operated a feed store on the corner lot and Peck operated the country store and filling station on the adjacent lot.

In December 1948, when plaintiffs purchased, Mr. Peck pointed out the line between his property and the property of defendant. Both plaintiffs, husband and wife, testified in this case. Mr. Mills' testimony tended to show that, when he purchased the property, he saw automobiles turning off the highway at each side of the gas pumps and he saw that people were going in and out of each of the two station entrances. He thought he was acquiring the driveways. On three different occasions,

after he purchased the property, he had gravel or chat hauled to fill up mud holes in the driveway and defendant helped spread the gravel and fix the driveway on the part which extended over the area in dispute. The area was continuously used by plaintiffs' customers coming to and going from the store and filling station. Defendant was present and saw the "shed-room" built on the west side of plaintiffs' store building and had helped with the work.

When plaintiffs were about to move their icehouse from the west side of their property to the east side, the defendant said: "I wouldn't do that. I would move it right over here on mine. You can let it sit there as long as you want to." Accordingly, plaintiffs had the icehouse moved onto defendant's property, as stated. Mills testified that the drive in question provided the only suitable access to the icehouse, store and filling station. Without the use of the disputed area of defendant's property, the 12 foot "shed-room" on the west side of plaintiffs' store would be practically worthless. It would be almost impossible to get a car in or out of the garage, or to get trucks to the front of it to load feed. To use the garage, trucks would have to back out into the highway, a hazardous operation. Without the use of defendant's property as a part of the driveway, the plaintiffs' patrons could not pull in and out of the filling station on the west side. Inability to use this part of defendant's property would ruin plaintiffs' business.

At one time within the four years preceding the litigation, the defendant fenced a part of his property, but his fence excluded the disputed area. When defendant was fencing his lot, he said to plaintiff Mills: "I'm going to fence my yard. Will this leave drive enough? * * * Does this leave you all the roadway you want?" The fence consisted of a "few posts with just a little old wire kinda hung up on it." Defendant never did tell Mills he could use the roadway, but he did say "it was to the advantage of both * * * to have the road there." When defendant started building the fence he said: "I don't want to interfere with the driveway. It is a benefit

to you and me both." There were no markers or concrete on the driveway, only gravel. Plaintiffs' deed from Peck called for no easement over the disputed area. Before the "shed-room" was built, Mills and defendant measured their properties and agreed upon the location of the true line between their lots. The "shed-room" extended to within 16 inches of defendant's line. When plaintiffs purchased the property Mr. Peck told Mills the gravel driveway had always been used as a roadway and that there had been a mutual agreement among the owners of the properties.

Mrs. Mills' testimony corroborated that of her husband in various respects and she further testified that, after they purchased their property, she talked to defendant. "He said he would like to keep that road going, that it was as much advantage to his property as it was to ours." She further said that they relied on what defendant said, otherwise they would not have built the "shed-room"; and that, when defendant put up a fence, he said to her, "he wanted to leave plenty of room there. * * He didn't want to fence up anything we needed." Defendant said "he wanted to sell his place and he wanted a road there for it to be a business place so he could sell it." When plaintiffs purchased the property from Mr. Peck, Mr. Peck said the drive "had always been used as a driveway and hadn't been nothing said about it and would always be used * * * always had been a road there and no one ever kicked on it being a road * * * it had been a road there ever since he had been there and before he bought it. * * * He said it was agreed that that road would be used for a driveway." He told her the agreement was between him (Peck) and the Wallenders. Until the difficulty came up between plaintiffs and defendant, the defendant had also used the drive, including the "disputed area," as a passage "going over to the store and back and forth" and for other purposes.

Defendant's evidence tended to show that after the dispute between plaintiffs and defendant arose, the defendant with the assistance of several persons moved the icehouse off of defendant's property and on-

to plaintiffs' property; that there was a shallow roadside ditch in front of plaintiffs' property that could be crossed by automobile at any place; that John Wallender was a party to no agreement for the joint or mutual use of the driveway; that the driveway was built in 1946 when the garage and store were first in operation; that Peck never told the plaintiffs about any agreement, and he knew of no such agreement; that plaintiffs' lot was sufficiently wide for traffic to conveniently come in and out and use the gasoline pumps; that plaintiffs also owned the next lot to the east of the store; that defendant had no agreement with plaintiffs about the driveway; that he just let plaintiffs use it where it crossed his land; that he never told them not to use it; that when plaintiffs moved their icehouse on his land, he didn't need the land and didn't care, but when they refused to move it, he moved it off his property; that defendant just let plaintiffs use the driveway across the corner of his land like a neighbor; that "it was just laying out there, wasn't doing nobody any good"; that he paid no attention to it; that he put up the first fence to keep the stock out of his yard; that he knew the general public and plaintiffs had been cutting across this 12 foot strip at the corner of his property since December 1948; and that he "never got anything out of it." Defendant was 79 years of age.

Plaintiffs-appellants contend that they were entitled to a decree adjudging the existence of the claimed easement over the described real estate of defendant-respondent; and that the trial court erred in failing to find and declare the existence of such easement and in failing to enjoin respondent from interfering with its use.

Appellants say the claimed easement "involves only a very small unimproved piece of defendant's land"; that it cannot be "inferred from the evidence that there is any more than nominal loss to the defendant by the imposition of the claimed easement"; and that the relief claimed is "more nearly that for an entranceway, established and used for the benefit of defendant and his predecessors in title as well as for plaintiffs * * * a joint proposition." Appellants

contend that the evidence shows "the respective owners of these lands * * * agreed upon the establishing of a joint driveway for their use and the use of their respective customers"; and that "the entranceway" was established for servicing both businesses. Appellants explain the situation as follows: "In order to provide readily useable access to and from the driveway, entranceways were established at the approximate western end of the 'garage' tract and at the eastern side of the 'filling station and store' tract, with a third entranceway being placed in the approximate center, but in the northeast corner of the 'garage' (now defendant's) tract. This so-called 'middle' entranceway was such that traffic would enter from Highway 44 and proceed on the driveway to the business on what is now the plaintiffs' tract, or traffic could proceed onto the driveway in front of what is now the defendant's tract. Such traffic could then leave by continuing on in the same direction by either the eastern or western entrance (exit), depending on the direction they were heading."

We find no competent or substantial evidence of any such agreement with reference to a joint or mutual use of the driveway or entranceway, and the direct evidence is to the contrary, as shown by the testimony of Wallender, Peck and respondent. The testimony of appellants as to the alleged statements by Peck with reference to any such agreement was hearsay and incompetent and was denied by Peck, as a witness for respondent. Further, there is no evidence that respondent had any knowledge of any statements by Peck to appellants, and such statements, if any, were not binding upon the respondent.

Appellants insist that the trial court erred in refusing to apply the doctrine of equitable estoppel. Appellants say that when they purchased their property there was "this so-called middle entranceway * * * and the driveway extending therefrom onto plaintiffs' as well as the defendant's land * * * well marked and defined;" that, when appellants purchased

their property from Peck, the respondent knew "that they did so under the. reliance that such entranceway was appurtenant to the driveway and to the tract in question"; that respondent said nothing to the contrary at the time appellants purchased or when they went into the possession and use of the driveway and entranceway; that respondent aided and encouraged appellants to use as much of his property as they needed in order to have the continued effective use of the entranceway; that respondent set his fence so as to avoid interference with the use of the entranceway and caused appellants to locate their icehouse "so as to front on this entranceway for convenient use by vehicular traffic"; that plaintiffs knew of the intention of appellants to construct an addition to their building and he assisted in the construction of the addition which "was so made as to be serviced by this entranceway"; that respondent knew that appellants were expending time and money in obvious reliance upon "the existence of their right to this entranceway;" that appellants' improvement of their land and the entranceway evidenced an honest belief in their right to the continued use of the easement; that respondent's conduct amounted to a positive representation of the existence of an easement and of appellants' right thereto; and that respondent's "conduct amounts to representation by acquiescence and silence," which estop him in equity from now asserting that appellants do not have the easement and rights claimed and also estop him from revoking the license to use the entranceway and drive. Appellants cite State ex inf. McKittrick ex rel. City of California v. Missouri Utilities Co., 339 Mo. 385, 96 S.W.2d 607; Liese v. Sackbauer, Mo.Sup., 222 S.W.2d 84; Davis v. Lea, 293 Mo. 660, 239 S.W. 823; Oliver v. Wilhite, 227 Mo.App. 538, 55 S.W.2d 491; Sanford v. Kern, 223 Mo. 616, 122 S.W. 1051; and Planet Property & Financial Co. v. St. Louis, O. H. & C. Ry. Co., 115 Mo. 613, 22 S.W. 616. These cases are not in point or controlling under the facts in this case. None of the cases cited present a similar state of facts, although the cases deal with certain equitable principles relating to equitable estoppel which are not disputed by respondent.

Equitable estoppel or estoppel in pais has been defined as " * * * the principle by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed." 19 Am.Jur., Estoppel, Sec. 34, p. 634; Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. 311, 235 S.W. 435, 442; Biggs v. Modern Woodmen of America, 336 Mo. 879, 82 S.W.2d 898, 905, 908; Sidney Weber, Inc. v. Interstate Motor Freight System, Mo.App., 205 S.W.2d 291, 297.

" ' "To constitute * * * an estoppel, the following elements are essential: '(1) There must be conduct, acts, language, or silence amounting to a representation or a concealment of material facts. (2) These facts must be known to the party estopped at the time of his said conduct, or, at least, the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done, and at the time when it was acted upon by him. (4) The conduct must be done with the intention, or, at least, with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. (5) The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. (6) He must in fact act upon it in such a manner as to change his position for the worse.' " ' " United Finance Plan v. Parkview Drugs, Mo.App., 250 S.W.2d 181, 184; Taylor v. Farmers Bank of Chariton County, Mo.App., 135

S.W.2d 1108, 1111; State ex inf. McKittrick ex rel. City of California v. Missouri Utilities Co., supra, 96 S.W.2d 607, 614 et seq. The opinion in the latter case points out that, "It is not every case of silence on the part of one having a legal right which will bar its future assertion. For a 'standing by' to become the predicate of equitable estoppel, it is necessary that the person remaining silent be *under a duty to speak*. In other words, he must speak only when common honesty and fair dealing demand that he do so." (Italics ours.) And see, Wilkinson v. Lieberman, 327 Mo. 420, 37 S.W.2d 533, 536; Davis v. Lea, supra; Anthony v. Midwest Live Stock Commission Co., Mo.Sup., 260 S.W. 94, 98; Brown v. Brown, 347 Mo. 45, 146 S.W.2d 553, 555.

In the case of State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities, 331 Mo. 337, 53 S.W.2d 394, 399, 89 A.L.R. 607, this court said: "It should be remembered that an estoppel does not itself give a cause of action; its purpose being to preserve rights already acquired and not to create new ones. McLain v. Mercantile Trust Co., 292 Mo. 114, 237 S.W. 506; Berry v. Massachusetts Bonding & Ins. Co., 203 Mo.App. 459, 221 S.W. 748; Schick v. Rehkop, Mo.App., 237 S.W. 209. An equitable estoppel cannot arise unless justice to the rights of others demands; its office being not to work a positive gain to a party, but to protect him from a loss which he could not otherwise escape, and hence should be limited to what is necessary to put the parties in the same relative position they would have occupied if the predicate of the estoppel had never existed."

As stated, appellants acquired their property in 1948 and respondent acquired his property only a month earlier. The gravel drives and entranceways on the front of the two lots had not been in existence prior to 1946. Appellants' deed did not purport to grant an easement or any rights in respondent's property, as appellants well knew. Appellants further knew the boundaries of the property they were purchasing. The true line between appellants' and respondent's properties was pointed out and was never in dispute. If we assume that

Peck told appellants what they testified to and which statements he denied, there was still no evidence that respondent knew of any such conversations or statements and, if such statements were in fact made, they imposed no duty on respondent to deny or refute them, since such statements were not within his knowledge. Appellants and respondent were strangers to each other and the improvements had been made after the severance in ownership of the two lots.

We find nothing in the testimony concerning respondent's statements to appellants about locating the icehouse on his property, or locating his temporary fence so as not to interfere with appellants' customers, which evidenced any intent to mislead the appellants or to subject respondent's property to a permanent easement or to give appellants an interest in such property. Respondent at all times referred to the property as his own as evidenced by the use of the word "mine." When appellants decided to add the "shed-room," the true line between the properties was again checked and appellants left a space of 16 inches between the new addition and the west boundary line of their property. While respondent knew of the construction of this addition, it was not being built on his property and no duty was imposed upon him to notify appellants that they could not continue to drive over his property in using the building. Appellants owned 110 feet of highway frontage, a part of which frontage was directly in front of the "shed-room." Respondent's conduct was not comparable to one who stands by in silence and sees another build a brick building which encroaches upon his property and then, when the building is completed, seeks to have the encroachment removed. Davis v. Lea, supra.

█ We find nothing in the evidence tending to show that any action, or inaction, statement or silence of respondent was intended to or could have been expected to mislead appellants, or that under the circumstances shown it would have been natural and probable that appellants would act thereon to their injury. The evidence

shows only the good conduct of a neighbor. Clearly there was no active or positive representation that an easement or agreement for the use of respondent's property existed. If there was any misrepresentation, it was constructive, growing out of silence and since the facts, as we find them, imposed no duty on respondent to speak, there was no estoppel.

There is no evidence that respondent had anything to do with the location of appellants' filling station pumps, which were equally distant from the respective sides of appellants' property. If they were sufficiently distant from one side of the lot, the same was true of the other. There was much conflicting evidence as to whether an easement over the small area of respondent's property was reasonably necessary to appellants' business. Apparently the trial court resolved these conflicts in favor of respondent. The evidence as to any real reliance by appellants upon any action or inaction, statement or silence of respondent is unsatisfactory and unconvincing. Whether in making the said improvements appellants placed any reliance upon the existence of the alleged valid and subsisting easement rests alone upon their oral testimony, which apparently was not accepted by the trial court. Further, the true facts concerning the existence of an easement or an agreement for joint use of the drive were equally available to both parties and the statements alleged to have been made by Peck to appellants, when appellants purchased their property, were certainly sufficient to put appellants on notice with reference to their right to use the drive, but apparently they made no inquiries. Reasonable diligence on appellants' part would have disclosed the true facts. There is no contention that the lapse of time during the use of the drive was sufficient to impose an easement by adverse use and limitations. A careful review of all the evidence convinces us that the judgment was for the right party.

The judgment is affirmed.

All concur.