**NATIONAL ALFALFA DEHYDRATING
AND MILLING COMPANY, Respondent,**

v.

**4010 WASHINGTON, INC., Appellant.**

No. 24899.

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1968.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 2, 1968.

Application to Transfer Denied
Jan. 13, 1969.

William V. North and Hudson L. McGuire, Jr., Kansas City, for appellant; Brewer & Myers, Kansas City, of counsel.

Albert Thomson and John R. Cleary, Kansas City, for respondent; Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, of counsel.

HOWARD, Presiding Judge.

This is a suit concerning a long-term written lease wherein trial to the court without a jury resulted in a judgment for the landlord in the amount of $4,006.00. The landlord appealed from this judgment claiming that it was entitled to a judgment in the amount of $12,264.00. The tenant did not appeal from the judgment below.

The factual situation is basically undisputed and may be chronologically stated as follows. On January 19, 1960, National Alfalfa Dehydrating and Milling Company (hereinafter called National) leased from 4010 Washington, Inc. (hereinafter referred to as 4010 or landlord) the entire second floor of a building owned by 4010 and located at 4010 Washington Street, Kansas City, Missouri, for a term of five years, from April 1, 1960 to March 31, 1965. A gross rental was provided payable at the rate of $750.00 per month for the first 24 months of the term, and $950.00 per month for the last 36 months of the term. Paragraph 25 of this lease gave the lessee an option to extend the lease for an additional 5-year term at the rate of $950.00 per month, plus a cost of living increase. This option to extend was to be exercised by one year's notice given on or before April 1, 1964. National did not exercise this option.

On October 21, 1964, the parties entered into an extension agreement whereby the lease of January 19, 1960 was extended for a period of 3 years, from April 1, 1965 to March 31, 1968. This extension agreement provided for a gross rental payable at the rate of $750.00 per month for the 36 months of the extended term. This extension agreement contained a cancellation clause in paragraph (c) thereof which reads as follows:

"Lessee may cancel this lease as of the last day of any calendar month subsequent to March 31, 1966, provided that Lessor has first been given not less than six months written notice of lessee's intention so to cancel this lease, and that on or before the effective date of such cancellation Lessee has paid to Lessor (in addition to all other sums due to Lessor by Lessee under the terms of this lease prior to said cancellation date) six percent (6%) of the rent which would have been due to Lessor by Lessee for the cancelled portion of the extended term had Lessee not exercised this cancellation privilege."

Thereafter, on August 17, 1965, National gave notice of cancellation as of February 1, 1966. This notice reads as follows:

"This is to notify you that we will terminate our lease covering office space in the 4010 Building as of February 1, 1966."

Fourteen days after the giving of the above notice, on August 31, 1965, National executed a lease for space in a new office building in Overland Park, Kansas, owned by one John L. Bear (hereinafter referred to as the Bear Lease). This lease was for a term of 5 years, from February 1, 1966 to January 31, 1971. It covered 4410 square feet of floor space at a rental of $1,470.00 per month plus escalator clause. This lease gave National a credit of $1,200.00 on the second month's rent stated to be in view of the cancellation penalty which National would be required to pay to cancel its lease with 4010.

4010 did not respond in any way to the notice of termination received from National under date of August 17, 1965. There was no communication between the two parties and on February 1, 1966, National moved out of its space in the building at 4010 Washington. On February 15, 1966, 4010 gave notice to National that it was "in default of payment for rent and electric current for the month of February, 1966" and that National had "wrongfully vacated the premises described in that lease."

Under date of March 22, 1966, the attorney for National wrote a letter to the attorney for 4010 which referred to two previous telephone conversations between the two attorneys and asked "how the matter should be handled." In response to this letter, the attorney for 4010 wrote to the attorney for National on April 15, 1966, stating "We do not think it appropriate for us to suggest that National handle the situation any differently from following the terms of its lease."

Under date of April 18, 1966, the attorney for National replied to the last mentioned letter. It made reference to the notice of termination given by National on August 17, 1965, and then said:

"Your corporation apparently had another tenant at the same or a better rental, and your corporation was more than agreeable to this termination, since National heard nothing from it.

"We would like to work the matter out with you and hope you will permit us to do it."

The attorney for 4010 responded by a letter dated April 21, 1966, which denied that 4010 had another tenant and was agreeable to the termination, and said in part:

"Under the terms of the Extension Agreement, National presently is clearly obligated for rent and current through April, 1966. There is not now and never has been anything to work out about that obligation. 4010 Washington, Inc. reminded National of its rental obligations in its letter of February 15, 1966, and we again called National's lease obligations to your attention in our letter to you dated April 15, 1966. Since these obligations have remained in default notwithstanding our correspondence, 4010 Washington, Inc. has given notice to National, dated this date, and a copy of that notice is enclosed."

On the same date, April 21, 1966, 4010 gave notice to National that it had breached its lease and the extension agreement thereof by failing to pay rent for the months of February, March and April, 1966, and by permitting the leased premises to remain unoccupied. The notice then declared that 4010 elected to cancel the lease under paragraph 14 thereof and to hold National for the rent and other charges for the balance of the term or until the space was rented to others.

On April 27, 1966, National filed suit for declaratory judgment in the circuit court of Jackson County, Missouri, stating that it had elected to terminate the lease as of February 1, 1966 and that 4010 did not object or otherwise reply to the notice of cancellation and alleging that 4010 was therefore estopped to deny the effectiveness of the notice of cancellation and praying for a declaration that National was not indebted to 4010 under the lease in any amount in excess of the cancellation penalty of $1,125.00.

The trial court concluded that the notice of termination dated August 17, 1965, which purported to terminate the lease as of February 1, 1966, "was sufficient to effectually cancel the lease at the first allowable time, which was April 30, 1966"; that by failing to object, 4010 "waived its right to claim that such vacation of the premises was a breach of the lease"; that by reason of the letters of February 15 and April 21, 1966, 4010 indicated that it was holding National liable for rent for the balance of the lease and that therefore National was not obligated to tender rent for the months

of February, March and April, plus the six per cent penalty in order to effectuate the cancellation of the lease as of April 30, 1966. The court concluded that the lease was cancelled as of April 30, 1966, and that National owed rent for the months of February, March and April only, plus the 6% cancellation penalty plus interest, and gave judgment on this basis in the amount of $4,006.00 to 4010.

Paragraph 14 of the lease, under which 4010 now claims, reads as follows:

"If default shall be made in the payment of rent, or if Lessee shall default in any other covenant or condition of this lease, then, if Lessee shall continue in default of rent after fifteen (15) days' notice, in writing, by Lessor to Lessee specifying the rent due, or shall continue in default of any other covenant or condition of this lease after thirty (30) days' notice, in writing, by Lessor to Lessee of the existence of such default or, if more than thirty (30) days are required to correct with reasonable diligence the matters complained of in said notice, Lessee shall fail within said period to commence the same and thereafter prosecute the same to completion with reasonable diligence, Lessor shall, at its election, have the right to cancel this lease and have immediate possession of the demised premises, without waiving or relinquishing any claim for rent or damages then due, and Lessee shall remain liable as hereinafter provided. In such event Lessor, without prejudice to any other right or remedy which it may have hereunder or by law, may re-enter the demised premises either by force or otherwise, or dispossess Lessee, any legal representative of Lessee or other occupant of the demised premises by appropriate suit, action or proceeding, and remove their effects and hold the demised premises as if this lease had not been made. Notwithstanding such termination, and during the full period which would otherwise have constituted the balance of the term of this lease, Lessee shall continue liable for the performance of all of the covenants of Lessee under this lease including Lessee's covenant to pay the full amount of rent reserved hereunder, and Lessor at its option may rent the demised premises for a term, or terms, which may be less than, or exceed the period which would otherwise have been the balance of the term hereof, in which event or events Lessor shall apply any monies collected FIRST to the expense of resuming or obtaining possession of and reletting the demised premises and SECOND to the payment of the rent due and to become due to Lessor hereunder, and Lessee shall be and remain liable for any deficiency."

It appeared at the trial that the premises in question had been leased to another tenant as of April 1, 1967, on as good as or better terms than the lease with National and the parties appear to have conceded that in view of this lease, 4010 had no claim for rent for any period subsequent to April 1, 1967. On this appeal 4010 alleges that the trial court was in error and that it was entitled to rent for the period from February 1, 1966 to March 31, 1967, plus the charges for electrical current provided for in the lease. National has now changed its position. It did not appeal from the judgment of the trial court holding it liable for rent to April 30, 1966, and now contends in its brief that the notice to cancel was effective April 30, 1966; that 4010 is estopped to deny the effectiveness of such notice on that date because of its silence, and that therefore 4010 should recover nothing over and above what was granted in the trial court.

On this appeal, 4010 contends that the notice to cancel the lease as of February 1, 1966 was a nullity and that it could be safely ignored by 4010 and did not cancel the lease at any date. In support thereof, 4010 relies on the early Missouri case of Wilgus v. Lewis, 8 Mo.App. 336. In that case the tenant had held over after the expiration of the lease and thus became a tenant from month to month. One month's

notice was required to terminate such tenancy. On April 13, notice was given that the tenant would terminate the lease on May 15. Rent was payable on the first of each month. The court concluded that this notice was ineffective and a nullity, saying:

"* * * to terminate the tenancy, when the rent is payable monthly, the month's notice which must be given must either specify the exact day on which the next month expires, or state generally that the tenancy will be terminated in one month from next rent-day. Sanford v. Harvey, 11 Cush. 93. The first notice, for May 15th (a day in the middle of the next month), did not comply with these conditions, was ineffectual, and plaintiff might safely disregard it."

In the early Massachusetts case cited above, Sanford v. Harvey, 65 Mass. (11 Cush.) 93, the Supreme Judicial Court of Massachusetts stated this rule as follows, 1. c. 96:

"* * * If, therefore, a person designate in his notice a day for the termination of a tenancy, which is not the day on which the rent is payable, or a day on which the tenancy can be legally made to expire by a notice, the notice is unavailing, and the tenancy may still continue. No one is obliged to regard a notice which fixes a day for the termination of a lease different from that on which a lease can be by law made to terminate. Such a notice, being one that neither party had a right to give, is treated as a nullity. * * *"

This was followed by the same court in Torrey v. Adams, 254 Mass. 22, 149 N.E. 618, 43 A.L.R. 1447.

Likewise, in A. Dubois & Son, Inc. v. Goldsmith Bros., 273 App.Div. 306, 77 N. Y.S.2d 473, the court considered a situation comparable to the one before us in the case at bar. There the lease gave either party option to terminate the lease on April 30, 1946, or on the last day of any month thereafter on the giving of 120 days notice. On May 28, 1946, the landlord gave notice to terminate on September 1, 1946. This was not 120 days notice. The court held that the provisions for cancellation of the lease must be strictly complied with and that therefore the notice which did not comply with the lease provisions was void and the lease continued in effect. The court emphasized that where the lease gave an option to terminate as of a certain date that the notice of termination must by its terms be effective as of the date in the lease.

■ From the foregoing cases it would appear that the rule is that a notice to terminate pursuant to a cancellation provision contained in the lease must be so certain that it cannot be reasonably misunderstood and that if a particular date is named in the notice, such date must be a date upon which the party giving the notice has a right to terminate the lease.

■ In the case at bar, there was no right of termination in National until April 30, 1966. The notice given by National provided for termination as of February 1, 1966. This is clearly not within the provision of the lease. National did not have a right to terminate the lease on February 1, 1966, and there is no way in which the cancellation provision in the extension agreement can be construed to give any such right as of February 1, 1966. The notice given by National cannot be reasonably misconstrued. It unequivocally gives the termination date to be February 1, 1966. We therefore conclude that under the foregoing authorities, the notice given by National was ineffective and the lease was not terminated thereby. Furthermore, we note that the giving of this notice on August 17, 1965 to be effective February 1, 1966, did not give 6 months notice as required by the cancellation provision contained in the lease.

National contends, in support of the judgment below, that this notice should be construed to be effective as of April 30, 1966, the first date upon which National

could cancel the lease under the cancellation provision thereof. It relies on four cases. The first is Worthington v. Moreland Motor Truck Co., 140 Wash. 528, 250 P. 30, decided by the Supreme Court of Washington in 1926. This case involved a month to month tenancy. Under Washington law, one month's notice was required to terminate such tenancy. On November 3, the tenant notified the landlord in writing that it had vacated the premises and sent the keys to the landlord. The court held that this was sufficient written notice under the statutes. Such notice of November 3 was not effective on November 30 because one month's notice was not given prior to November 30. The court then concluded that such notice was effective at the end of December and that the tenant was liable for December rent only. It is to be noted that no date was specified in this notice and the court construed it to be a notice providing for cancellation at the first date which could legally be effective.

In Medical Professional Building Corporation v. Ferrell, 131 S.W.2d 683, the Texas court of civil appeals was considering a lease which provided that it should be automatically extended from year to year unless 60 days notice of termination was given prior to the anniversary date. A pre-existing mortgage was foreclosed and the new owner who purchased at the foreclosure sale notified the tenant that it would not renew the tenant's lease. This notice was given less than 60 days before the anniversary date. The lessee stayed in possession for a year after such anniversary date and was then ejected. He brought suit for wrongful ejection and the court held that, since the notice was given less than 60 days before the next anniversary of the lease, such notice was not effective on that date but it would be good on the next anniversary date one year hence. No reason or authority is given for this conclusion. Again, it is noted that the notice did not specify any date on which it was to be effective and the court treated it as effective on the first date when a right to cancel existed.

National also cites and relies on Reichers v. Fenn, 181 Misc. 916, 50 N.Y.S.2d 221. In that case the lease permitted cancellation at any time after December 15 on giving 30 days notice and with payment of rent to the end of the month following the notice. The tenant gave notice on October 28 that he would vacate the premises on January 1 following. It is noted that this was much more than the required 30 days notice and the termination date was at a time when the lessee had a right to terminate and rent was paid as required by the lease to and beyond the end of the month following the month in which the notice was given. The point of contention in the case was that notice could not be given until after December 15 but the court held that the date of December 15 determined the time when the cancellation could become effective and did not govern the time when notice could be given. The case of Warren v. M. Samuels & Co., 57 S.D. 105, 230 N.W. 807, also cited by National, is to the same effect and on the same issue.

We are not persuaded by these cases that the notice in the case at bar should be held to be effective on April 30, 1966, when by the express terms of the notice, it was to be effective as of February 1, 1966. The Reichers and Warren cases last discussed are not in point. Neither the Medical Professional Building Corporation case nor the Worthington case involved a notice specifying a date for the termination of the lease. Both cases involved very general notices and in both cases, the court reached its conclusion without discussion or citation of authority, being preoccupied with other issues.

Furthermore, the payment of rent for the months of February, March and April, 1966, was a condition precedent to the right to cancel the lease as of April 30, 1966, and National did not make such payments. Likewise, the payment of the 6% cancellation penalty prior to the effective date of cancellation was a condition precedent to the right to cancel and National did not make or tender such pay-

ment. At this time National was claiming the right to cancel as of February 1, 1966. If it had had the right to cancel on February 1, the payment of this penalty would have been required prior to February 1, before the cancellation could have become effective. The trial court held that National was not obligated to tender these payments because 4010 was trying to hold National liable for the entire lease period. It is presumed that this is on the basis that 4010 would not accept such tender and National would not be required to perform a useless act. This doctrine might be applicable if National had been attempting to comply with the lease but it has no bearing on the situation before us where National was claiming a right to cancel on February 1, 1966, in knowing violation of the clear provisions of the lease. Thus, under any theory of the case, National failed to make or tender payments which it knew to be conditions precedent to the effective cancellation of the lease. Under these circumstances the lease was not cancelled and 4010 was entitled to proceed under paragraph 14 thereof. See S. M. Rose Corp. v. Todini, 9 Misc.2d 55, 166 N.Y.S.2d 740.

■■ The trial court also held that by failing to object to the vacation of the leased premises on February 1, 1966, 4010 waived its right to claim that such vacation was a breach of the lease. Waiver is the intentional relinquishment of a known right and here it is clear that 4010 'did not intend to relinquish its rights as is shown by its letter of February 15, 1966, to National and the other correspondence heretofore discussed. In Willibald Schaefer Co. v. Blanton Co., Mo.App., 264 S.W.2d 920, 925, the court said:

"It is elementary that for a waiver to occur, there must be an intentional relinquishment of a known right; and if there has been no actual intention to waive, there can be no waiver unless the one party has acted in such a manner as to be estopped from denying waiver

where he has misled the other party to his prejudice. * * *"

See also Commerce Trust Company v. Weed, Mo., 318 S.W.2d 289, 303, where the court said:

" 'Waiver' has been defined as 'the intentional relinquishment of a known right.' Lucas Hunt Village Co. v. Klein, 358 Mo. 1054, 218 S.W.2d 595, 599. And, to constitute a waiver, 'there must be a clear, unequivocal and decisive act of the party showing such purpose, and so manifestly consistent with and indicative of an intention to waive that no other reasonable explanation is possible.' * * *"

And see Fischman v. Kiphart, Mo.App., 297 S.W.2d 784. Neither was 4010 estopped to deny such waiver as is demonstrated hereinafter.

Appellant 4010 next contends that the trial court erred in holding that it was estopped to assert its rights under the lease because of its silence and failure to object to the cancellation notice given by National. National contends that an estoppel resulted from such silence. It states that 4010 had "knowledge or reason to suppose that National was relying on the silence." National states that if it had not been for 4010's silence it would not have vacated the premises on February 1 and that other arrangements would have been made. National does not set out what other arrangements it might have made and in view of the fact that it had already entered into a binding lease for larger space at greater rent and had received a concession from the new landlord to compensate for the cancellation penalty due under its lease to 4010, we cannot and will not speculate on what other arrangements National might have made.

■ In order to create an estoppel, there must be a representation by the party

to be estopped which is relied on by the party claiming the estoppel who has a right to rely thereon, and it must be shown that the party claiming the estoppel has changed his position to his detriment in reliance on such representation. See State on Inf. McKittrick ex rel. City of California v. Missouri Utilities Company, 339 Mo. 385, 96 S.W.2d 607, and Mills v. Taylor, Mo., 270 S.W.2d 724. The authorities are agreed that silence may in proper circumstances amount to a representation upon which the other party may rely. However, before such silence can amount to a representation there must be a duty to speak and there is no duty to speak where the other party has knowledge of the true facts. See Mills v. Taylor, Mo., 270 S.W. 2d 724, and Karsznia v. Kelsey, Mo., 262 S.W.2d 844. In the case at bar National had as much knowledge of the terms of the lease as did 4010. The terms of the cancellation provision in the extension agreement are clear and unambiguous. National took advantage of the provision for a cancellation penalty contained therein to secure a concession of $1,200.00 rent from its new landlord. Furthermore, the extension agreement introduced in evidence contains a pencilled notation of "April 30" in the margin opposite that part of the cancellation provision which permitted cancellation "as of the last day of any calendar month subsequent to March 31, 1966." Under this provision the first date that cancellation could be had was April 30, 1966, as noted by the pencil notation. National's president testified that this pencilled notation was in his handwriting although he disclaimed any memory as to why or when he made the notation. National's president testified that he instructed the corporate secretary to consult with its attorneys and be sure that the notice of cancellation was correct. Thus, it is apparent that National was fully cognizant of the requirements of the cancellation provision and since it had such knowledge, there was no duty on the part of 4010 to speak up and remind National of those requirements.

Further, in order to create an estoppel there must be a reliance on the representation which in this case is claimed to be the silence on the part of 4010, and there can be no such reliance where the party claiming the estoppel knows the true facts. See State on Inf. McKittrick ex rel. City of California v. Missouri Utilities Company, 339 Mo. 385, 96 S.W.2d 607. Since, as pointed out above, National knew the provisions of the cancellation agreement it cannot say that it relied upon the silence of 4010. Also, before an estoppel can be created there must be a change of position by the party claiming the estoppel to its detriment in reliance upon the representation of the other party, State on Inf. McKittrick ex rel. City of California v. Missouri Utilities Company, 339 Mo. 385, 96 S.W.2d 607. Mills v. Taylor, Mo., 270 S.W.2d 724; Commerce Trust Company v. Weed, Mo., 318 S.W.2d 289; and Willibald Schaefer Co. v. Blanton Co., Mo.App., 264 S.W.2d 920. In the case at bar, the notice was given August 17, 1965, and the evidence is that on August 31, 1965, National executed the Bear lease which was dated August 4, 1965, and for which it had been negotiating for some period of time. Thus, as of August 31, 1965, National was obligated to pay rent on both leases, beginning February 1, 1966. This obligation had become complete as of August 31, 1965, only 14 days after the giving of the notice, and certainly National did not put itself in this position in reliance upon 14 days of silence by 4010. In the case at bar, both parties had equal knowledge of the facts and there can be no estoppel. See Wood v. White Eagle Oil & Refining Company, Mo.App., 274 S.W. 894, where the court said: "It is well settled that when the facts are known to both parties, or they have equal means of knowledge, there is no estoppel in favor of either."

In its argument National refers to a conversation with a Miss Lienard claiming that she told National that 4010

was agreeable to its vacating the premises February 1, 1966. Miss Lienard denied such statement and National's own evidence shows that she was an independent real estate broker with offices on the ground floor of the 4010 building and not an employee or agent of 4010, and the trial court so found. Consequently, any statement that she might have made could not be binding on 4010 and could not form the basis for an estoppel. Neither can the incidental knowledge of National's intention to move, possessed by Jensen, a vice president of 4010 who had an office in the building, or Zimmerman, who was in charge of the building for 4010, constitute a basis for estoppel.

In Liese v. Sackbauer, Mo., 222 S.W.2d 84, the plaintiff was entirely ignorant of defendant's claim to the land in question. This effectively differentiates that case from the case at bar. We therefore conclude that 4010 was not estopped to assert its right under the lease.

Appellant 4010 contends that under the lease and paragraph 14 thereof, it was entitled to rent and electrical current charges from National until the premises were rented to another tenant on April 1, 1967. Respondent National contends that it is only liable for rent for the months of February, March and April, 1966, plus the cancellation penalty of 6%. It maintains that the judgment below gave this to 4010 and that such judgment should be affirmed. This contention is based on the theory that it could have cancelled the lease on April 30, 1966, and that damages for breach thereof cannot be more than it would have had to pay if it had cancelled the lease pursuant to the provisions thereof. It makes no reference whatever to the provisions of paragraph 14 of the lease which spells out the duties, rights and obligations of the parties in case of a breach. In support of this contention National cites the cases of Pecarovich v. Becker, 113 Cal.App.2d 309, 248 P.2d 123, and W. K. Ewing Company v. New York State Teachers' Retirement System, 23 Misc.2d 812, 197 N.Y.S.2d 364.

In the Pecarovich case a professional football coach had a 3-year contract providing for salary payments of $4,500.00 for the first year, $5,500.00 for the second year, and $7,500.00 for the third year. The contract provided that it could be terminated at the end of the first year on a payment of $2,500.00. This cancellation provision was not exercised; rather the coach was fired before the end of the first year having been paid only $3,000.00 of the first year's salary. The coach sued for breach of the contract claiming the balance of his first year's salary, plus the total of the second and third year's salary called for by the contract. The California Appeals court held that if a person refuses to perform a contract which is terminable by him on certain conditions, the measure of damages for such breach is the amount of money he would have had to pay if he had exercised the right of termination as given in the contract. The decision in the New York State Teachers' Retirement case, supra, enunciates the same rule.

We are not persuaded by these cases as they seem to be contrary to the holding of Missouri courts. Thus, in Leon v. Barnsdall Zinc Co., 309 Mo. 276, 274 S. W. 699, the court held that conditions imposed as precedent to the right to terminate a contract must be complied with before such contract can be terminated and where there is no such compliance the contract continues in force and the measure of damages for breach thereof is the amount to be paid under the entire contract. See also Home Insurance Company v. Hamilton, 143 Mo.App. 237, 128 S.W. 273, and Hawkinson v. Johnston, C.A.8, 122 F.2d 724, 137 A.L.R. 420. In the case at bar, the right to cancel the lease was conditioned on three things, (1) the giving of 6 months' notice to cancel on April 30, 1966, or at the end of any month thereafter; (2) payment of the rent due up to the date of cancellation, and (3) payment of the cancellation penalty. Neither one of these conditions precedent to the right of cancellation was performed by National. There-

fore, the lease remained in full force and effect. 4010 acted in strict compliance with the terms of paragraph 14 of the lease when it gave notice of default in payment of rent and of breach in vacating the premises, on February 15, 1966, and when it notified National on April 21, 1966 that because of the continued default in the payment of rent and allowing the premises to remain vacant, it elected to cancel the lease under paragraph 14 thereof and hold National liable as provided in said paragraph. It therefore follows that pursuant to the provisions of said paragraph 14, 4010 is entitled to recover from National because of the breach of the lease, the rent at the rate of $750.00 a month for the months of February, 1966 to March, 1967, inclusive, plus appropriate interest.

■ 4010 also makes claim for payment for electrical current during each of these months. Paragraph 18 of the lease provides that 4010 shall furnish heat, air conditioning and water, and that "Lessee * * * agrees to pay for its own electric current for lighting, air conditioning and any other use at the rate of 40¢ per square foot per year based upon 3,800 square feet." It is apparent that this payment is designed only to reimburse 4010 for the cost of the electric current furnished to National and is not paid by National as part of the consideration of the lease. Since National has not occupied the space during the period for which 4010 is entitled to recover, it follows that it used no electric current and is not obligated to reimburse 4010 for the cost of current which it did not use.

For the foregoing reasons, the judgment of the trial court is reversed and the cause remanded with directions to enter a judgment in favor of 4010 Washington, Inc., for rent in the amount of $750.00 per month for the months of February, 1966 to March, 1967, inclusive, plus appropriate interest and its costs.

All concur.