Shaw, C. J.
The question in this case depends so much on its own peculiar circumstances, that it is difficult to find any authority much in point; nor is it likely to stand as a precedent for another case. In examining these circumstances, it appears, that at an anterior period Rand had sold a considerable amount of goods to one Powers on credit, on the recommendation of these plaintiffs that he was a safe and *90 trustworthy man. It turned out afterwards, that Powers did not pay his debt thus contracted; and Rand, ascertaining, as he believed, that Powers was not entitled to the credit for which the plaintiffs recommended him, brought his action, as for a false recommendation, by means of which he had sustained damage to the amount of his debt, alleged to be a little over $1,000. Without trial, the parties came to a compromise, by which the plaintiffs agreed to pay Rand $588, about three fifths of the whole. Thereupon, Rand gave the plaintiffs a receipt acknowledging said payment, and agreeing to divide with them any amount which he should afterwards “ receive from the said Powers,” in the proportion which the amount thus received of them bore to the whole debt of Powers, including costs and expenses.
Rand had previously obtained a policy of insurance on the life of Powers, for $800, which was known to Cutler at the time. On obtaining this policy, the insurable interest being that of a creditor in the life of his debtor, it was made upon the usual condition, that in case of loss the assured should assign to the company a portion of his debt, equal to the sum insured. Powers having died within a year, the defendant claimed a loss, which, upon his assignment of $800, part of his debt, the insurance company paid him.
Upon the defendant’s agreement thus to share what he should recover of Powers, the plaintiffs bring their action, and claim their proportion of the sum thus recovered, deducting premium and incidental expenses, on the ground that the defendant has received this part of the debt due to him from Powers, within the true intent and meaning of his contract.
The question, we think, depends upon the construction of this agreement of the parties. The original liability of Cutler to -the defendant was for an alleged tort, with which Powers had no concern. After the payment made by them to Rand, the whole debt was then due from Powers to him. It was, therefore, that whole debt, the proceeds of which Rand agreed to share, when recovered, with the plaintiffs. It would be too literal a construction to hold, that he meant merely to divide what should be paid him by the hands of Powers, or *91 immediately out of his funds. Suppose some friend, or some person dealing with Powers, had offered Rand to purchase Powers’s debt at fifty per cent. Although this would not have been received of Powers, or out of his funds, yet it would be received by means of Powers’s debt, and by alienating and wholly parting with that debt. The stipulation, that what should be obtained of Powers should be recovered proportionally to the use of the plaintiffs and the defendant, rendered the latter a trustee for the plaintiffs; and he could not after-wards, legally or equitably, appropriate the debt exclusively to his own use. It is said, that if he misapplied his power over the debt, by giving it away, or not using due diligence to collect it, the plaintiff’s remedy would be case for tort, and not assumpsit. This is .true, if it was a misuse of the debt only, and did not result in the receipt of money. But, if it was an alienation of the debt, which did result in the receipt of money, he was equitably bound, upon the requisition of the plaintiffs, to share that money with them; and when nothing remains, under an equitable obligation or duty, but to pay money, assumpsit for money had and received lies. Now, it appears that the obligation of the insurance company was not an unconditional promise to pay a sum of money to Rand on the decease of Powers; but it was a stipulation, that they would, on the happening of that event, take an assignment of the debt pro tanto, and pay for it at par. This was an entire transfer and alienation of the debt of Powers, as far as an assignment of a part of a chose in action can be made. Perhaps the debtor or his administrator would not be bound to take notice of any right of the assignee to part of the amount; but it was so far good between the parties, Rand and the company, that, upon collecting it, he would be bound to account to them for their share. It was so far an alienation and appropriation of the debt by Rand, that he could not afterwards equitably collect it for himself. And further, such an assignment of part of the debt would have been an authority, coupled with an interest, which would have warranted the debtor or his administrator in paying such part of the debt to the company, if they had chosen so to do, which neither *92 Rand nor any one under him could have contested; and the obligation to an assignment, in part, of a chose in action, is for the debtor to make, and not a third person. Rand has then parted with a portion of his debt, and got his money for it, by thus appropriating it to his own use.
But the strength of the objection to this view is, that Rand got the insurance for his own benefit, paid the entire premium, and ought to have the entire proceeds to his own use. There is certainly great weight in this argument; but we think it cannot avail the defendant against the terms of his own contract with the plaintiffs. Had he made this collateral contract, without parting with the debt, it would have presented a very different question. King v. State Mut. F. Ins. Co. 7 Cush. 1. But the insurance by the company was not in consideration of the premium only, but of the premium and a transfer, in whole or in part, of the debt, in which the plaintiffs, by the defendant’s agreement, had an interest with him; and the proportionate value of the premium to such assignment, as an inducement to the company to make the insurance, is immaterial. We cannot distinguish it in principle from the case of such a creditor, standing as Rand did, employing a broker, and thereby incurring expense, to negotiate an assignment and sale of the debt, by which part was received. The fact, that he had advanced this brokerage commission out of his own funds, would not diminish his obligation to share the proceeds with the plaintiffs. It is a general rule in equity, that one who is a trustee of property for himself and another, cannot deal with the property in any way more favorable to himself than to his cestui que trust.
We place our decision for the plaintiffs in this case on the precise ground, that the defendant has appropriated and parted with a debt, of which he alone had the legal title, but in which the plaintiffs had an equitable interest in common with him, disabling himself from collecting it in any other way, and has realized money from the operation, which he now holds, and which the plaintiffs are entitled to recover.
We have not overlooked the fact, that at the time of the Arrangement between these parties, it was known that the de *93 fendant had a policy on the life of Powers, and offered to the plaintiffs to give them an interest in the policy, if they would pay a proportionate part of the premium, which offer they declined. It does not appear, that the plaintiffs knew, that by the terms of the policy the assured could only recover of the company by assigning to them a proportional part of the debt. We do not decide on the ground that the plaintiffs had any interest in the policy; but only that they had an interest in the debt, which the defendant, for his own benefit, assigned to the company; and it makes no difference, that this assignment was made in compliance with a previous condition in a policy made for his own benefit, and without which assignment he could not claim that benefit.
If the parties do not agree on the amount of damages, the case is to be referred to an auditor.