## SUPREME COURT—IN BANCO.

### JULY TERM—1869.

*Allen, Ch. J., Hartwell and Widemann, J. J.*

### CHARLES BREWER *vs.* H. L. CHASE.

IF A plaintiff having a full remedy in a lower court brings his action in a higher court, his costs will be limited to those recoverable in the lower court.

A statute giving a lower court jurisdiction of matters previously within the jurisdiction of the higher court gives concurrent and not exclusive jurisdiction.

The *ad damnum* laid is the amount which fixes the jurisdiction.

Except under the landlord and tenant Act, written notice to quit is not required before bringing ejectment by the landlord against the tenant, but some reasonable prior notice will be required in leases voidable at the landlord's option.

If a lease provide that the lessee may continue to occupy for a further term of three years at the same rental, the extended lease need not have the same other covenants and conditions as the original and the option to extend the lease need not be exercised during the original term.

The continued occupancy is from year to year.

Tenant unless otherwise agreed may always sub-let.

A condition in a lease against sub-letting is not broken by the joint occupancy of one room by a physician as his office, as the lease was of land alone, and allowed the tenant to remove such buildings as he should need.

Action to recover a certain lot of land, situated in Honolulu.

At the trial, the plaintiff showed title, by Royal Patent, to the land in question ; he also put in a lease, reading as follows :

" The said parties of the first part, for themselves, their principals, heirs, executors and assigns, upon the conditions hereinafter expressed, do hereby lease unto the said party of the second part, his heirs and executors, a certain lot of land situated on Fort street, (described), which lot, the party of the second part, his heirs or executors, are to possess and enjoy, without molestation, for the term of two years from the first day of October, A. D. 1865 ; provided, he or his said representatives shall comply with the following engagements, on his part, viz. :   The said party of the second part, his heirs or executors, are to pay to the said parties of the first part, their heirs, executors, administrators or assigns, a yearly rent of three hundred and sixty dollars, in quarterly payments, for each and every year during the term of this lease ; and it is further understood, that at the termination of the aforesaid term of two years, from the first day of October, 1865, it is to be at the option of the said party of the second part to continue to occupy the said premises for a further term of three years, at the same rate of rental ; provided, however, that if at any time at the expiration of the

Charles Brewer v. H. L. Chase.

afore-mentioned term of two years, the parties of the first part should wish to sell the premises, then this lease is to be null and void, and the party of the second part to be allowed the privilege of removing all improvements made by him, and the parties of the first part agree to give the party of the second part two months notice of such intention to sell said premises. Should the party of the second part at the expiration of the said term of two years wish to cancel this lease, he is to have the privilege of removing all improvements made by him. It is furthermore understood, that the party of the second part shall not sub-let or transfer any of the privileges of this instrument to any other party.

"And it is further understood by the parties hereto, that if any rents be due and unpaid, or if default shall be made in any of the covenants herein contained, then it shall be lawful for the said parties of the first part or their representatives, to re-enter said premises and to remove all persons therefrom, and the said party of the second part doth covenant to pay to the said parties of the first part or their representatives, the yearly rent as before specified, in quarter-yearly payments, and at the expiration of the said term he will quit and surrender up the premises hereby demised, in as good state and condition as reasonable wear thereof will permit. And the said parties of the first part do covenant that the said party of the second part, on paying the said rent and performing the covenants aforesaid, may peaceably and quietly hold and enjoy the said demised premises and privileges."

The following evidence was adduced by the plaintiff:

I. B. Peterson, of the firm of C. Brewer & Co., identifies lease and signatures, and describes the land claimed; says defendant is now in possession of land.

"I don't know, of my own knowledge, of notice to Chase to quit. So far as I know, Chase is not now recognized as tenant, or we should have collected rent; Mr. Carter and John Brewer are C. Brewer's attorneys."

Cross examined: "Chase has tendered us money within the last nine months, probably the amount he considered the quarterly rent; it was the same as before paid, ninety dollars, the former quarterly rent. He has tendered ninety dollars three times since September 30th, 1868; the tenders were refused."

John D. Brewer, one of the plaintiff's attorneys testified: "I don't recognize defendant as our tenant, nor does Mr. Carter, who is out of the kingdom; we refused rent because the terms of the lease were violated." (The defendant's counsel objected to this evidence, on the ground that the complaint did not aver forfeiture of lease, but it was admitted, *de bene*).

Dr. John McGrew:

"I occupied two rooms as doctor's office in Chase's building, not exclusively; Chase occupies them with me; his customers sit in there, and I have the use of them whenever I require them; Chase gives me the right to occupy them privately whenever I wish. There is no written agreement between us. I went in there about last December, under an understanding that I occupy, and receive my patients there. Chase was opening a drug store there, and said he could not occupy it exclusively; I told him I would give him my business, and I have done so ever since; I pay no rent; my business is of considerable value to a druggist. (Objected to, but admitted *de bene*). I feel bound, in good faith, to have drugs put up by Chase when he has them. After I went in, Carter talked with me and Chase; Carter was here when the action was brought. (Further evidence of this conversation objected to, but admitted as before). Carter and Chase had some dispute about the right to admit me into the building, but I tried to avoid hearing it; there were two conversations between them, I suppose with the same result, but I avoided hearing."

The plaintiff having rested his case, the defendant's coun-

sel moved for judgment of non-suit, on the following grounds:

"First—Because the action is wrongfully brought in this Court, in that it should have been instituted under Chapter 16, Article XL, of the Civil Code, entitled, 'Of summary proceedings to recover possession of lands in certain cases.'

"Second—This is an action of ejectment, and notice to quit should have been proved.

"Third—No proof of the violation of the conditions of the lease, or of any forfeiture thereof, nor of claim of forfeiture is shown, even if it had been pleaded, which it has not been; no sub-letting or transfer is shown.

"Fourth—No damage is shown."

The Court, after hearing argument, granted said motion, whereupon the plaintiff's counsel filed a bill of exceptions, to the allowing of which, many objections by defendant's counsel were filed. The presiding Judge allowed the bill, in so far as the same conforms to the pleading and record, including the clerk's notes of evidence, which were all made part of the bill.

At the Supreme Court in Banco, R. G. Davis and R. H. Stanley, Esqs., for defendant, made the following points:

I. The action is wrongfully brought in this Court.

The allegation in the plaintiff's declaration is, that the defendant "has unjustly and contrary to law and the rights of plaintiff, taken into his possession and converted to his occupation." The statute, by Sections 939 and 940 contemplates this kind of grievance.

If the lessee has violated any of the conditions of his lease, the remedy is in an inferior court, and the jurisdiction of this Court is simply appellate, because the statute provides a more speedy remedy; Section 1118 of Civil Code contemplating another and more numerous class of cases than those arising under differences between landholders and tenants.

In the latter class, the title of the plaintiff, however defective, cannot be disputed by the defendant. In the former,

the title of the plaintiff and his right to possession may form, as it generally does, the very gist of the issue.

II. Courts discourage a variety of remedies and do not favor forfeitures.

III. Where action is brought between landlord and tenant, claimant must show that the tenancy is determined. How have they attempted to show it? By evidence of sub-letting? It is not contended, that any sub-letting of the entire premises is shown by the testimony; for that is, that the original lessee is still in possession, has for several successive quarters made tender of the rents to his landlord, which have been refused.

IV. There is no occupation of any exclusive portion of the premises, and if any were shown, it still might be a grave question, whether that were a sub-letting or transfer under the lease.

V. If it is merely a condition (and not a covenant), where is the right of re-entry under the lease? where is the covenant of forfeiture in the lease, if the condition be held violated? And if there be none in the lease, then most certainly the special statute bars this action in the Court. This Court could not decree upon it.

VI. There is no proof of any violation of this lease, even if it had been pleaded. The evidence introduced, attempting to show it, was merely admitted *de bene* on exception by defendant, and might be wholly excluded from the consideration of the Appellate Court.

VII. If this be an action of ejectment, notice to quit should have been proved.

When the relations of landlord and tenant is once established, notice to quit is necessary, 13 Johns., 106; 1 *Ib.*, 322; 6 *Ib.*, 46; 3 *Ib.*, 422; 2 vol. Greenleaf's Ev., Sections 321 and 325.

VIII. The plaintiff has shown no damage suffered by him, on the contrary he has shown that defendant has been and is

ever ready to pay the rents quarterly arising, at the order of the plaintiff. No act is shown which could vary the nature or value of the property in question.

IX. Conditions precedent or subsequent relate more especially to contracts of a different nature from those between landlords and tenants; the only conditions which the Court can regard in this latter class of cases, are those plainly expressed in the lease itself.

If there be any condition precedent which the tenant has violated, in order to form the basis of the plaintiff's action, that remains to be shown, and the absence of any was the material ground upon which the Court at *nisi prius* founded its judgment of non-suit.

————

POINTS FOR THE PLAINTIFF, BY S. H. PHILLIPS, ESQ.:

Two questions are presented—

1. Does Section 939 of Civil Code, enlarged by statute 1864–5, p. 14, give an exclusive, or cumulative remedy?

2. Does the statute, even if exclusive, apply in this case?

I—The remedy is cumulative:

1. The two propositions are in the same statute; if anything depends upon order, s. 939 precedes s. 1118.

2. The law does not abhor concurrent remedies. Metcalf *vs.* Kapai; 1 Howard's S. C. R., 225; Adams *vs.* Richardson, 43 N. H., 212.

3. Subsequent statutes do not, by implication, repeal or limit previous ones giving jurisdiction. Wood *vs.* U. States, 16 Peters S. C., 363; York *vs.* Chapman, 10 Ad. & E., 209; McCarter *vs.* Orphan Asyl., 9 Con., 306. Even in criminal cases. Rex *vs.* Carlisle, 3 B. & A., 161; Rex *vs.* Jackson, Cowper, 297.

4. Most especially, if, by implication, the jurisdiction of a Court of general jurisdiction will be ousted. Dwarris on Stat., 652; Crisp *vs.* Bembury, 8 Bing, 374; Beaubieu *vs.*

Brinkenhoff, 2 Scam., 269; Wells *vs.* Mason, 4 Scam., 84; State *vs.* Abram, 4 Ala., 272; State *vs.* Coleman, 1 Green, 98; State *vs.* Bell, 5 Port., 365.

5. Courts always incline against exclusive remedies, considering the old law, the mischief, the remedy contemplated, and the reason thereof. As to the mischief and remedy, see Taylor on Landlord and Tenant, s. 713; King *vs.* Dickman, 2 Gray, 311.

6. The remedy contemplated by s. 1118, presumes a continuance, not a termination, of the relations of landlord and tenant. Rowan *vs.* Lytle, 11 Wend., 622. In this case it had not ceased, the lease not being void, but voidable on the breach of condition subsequent—an entry or equivalent action being required. Co. Litt., 202 on Jackson & Ellsworth, 20 John., 18; Fifty Associates, *vs.* Howland, 11 Met., 99; Elliot *vs.* Strong, 1 Gray, 573; Willard *vs.* Henry, 2 N. H., 120; Stuyvesant *vs.* Davis, 7 Paige, 527; Taylor, L. & T., s. 298. In case of forfeiture, the demandant is in of his original estate, not by reverter. Co. Litt., 142 a.

7. The summary landlord and tenant laws of other countries are not considered as limiting the right to bring real actions, or actions in the nature thereof. Doe *vs.* Watt, 1 Man. & Ry., 694; Dolby *vs.* Miller, 2 Gray, 135; Stratton *vs.* Lord, 22 Wend., 611; Taylor, Landl. & Ten., s. 713, note.

II—The summary process act does not provide a remedy adequate to this case:

1. There is no mode of recovering damages—not by action sounding in contract, of which the inconsistency is obvious. Taylor, L. & T., 710; Birch *vs.* Wright, 1 D. & E. 378, 387.

2. The old English process of ejectment being fictitious, a fiction was invented for the recovery of mesne profits, for which there is no equivalent by our statutes. A simple remedy being provided by the general statute, giving a real remedy, recourse must be had to that alone.

Charles Brewer *v.* H. L. Chase.

III—It is not understood that the question whether a case for the forfeiture of the lease has arisen is now to be considered, but it is obvious that there has been an underletting. Payment of stated rent is not essential. Hunt *vs.* Comstock, 18 Wend., 667.

HARTWELL, J.: The statute provides for bills of exceptions in "summary" form. [Civ. Code, §836.] When counsel agree upon what evidence they deem material, time may be saved, but otherwise, all the evidence, and not inferences, on material points, should appear. In considering the exceptions, all the law bearing upon the case is to be reviewed, and not solely the reasons urged by counsel, or assigned by the Court in giving the judgment. [Munro *vs.* Potter, 34 Pick., 358.]

First, as to the jurisdiction. Section 1118 Civil Code, under which this action was brought, reads as follows : "In actions to recover at law any specific property, real or personal, or any specific share or interest, or right to property, real or personal, in kind, as in cases of replevin or ejectment, the plaintiff in person, or by attorney, shall file with the Clerk of the Court a petition for process, which may be in the following form :" (form of complaint for wrongfully taking and converting.) This section is under the title of "Actions upon unliquidated demands," and is nearly word for word like the statute of 1847. The statute of 1853, "Providing summary proceeding to recover possession of land in certain cases," amended by Act approved June 3, 1865, so as to include forfeitures, reads as follows : "Section 1. Whenever any lessee or tenant of any lands or tenements, or any person holding under such lease or tenant, shall hold possession of such lands or tenements without right, after the determination of such tenancy either by efflux of time, or by reason of any forfeiture, under the conditions or covenants in any such lease ; or if a tenant by parole, by a notice to quit of at least ten days, the person

entitled to such premises may be restored to the possession thereof in the manner hereinafter provided." Then follow provisions for a hearing before a Police or District Justice, for the issuing of a warrant of removal, annuling the relation of landlord and tenant, and for staying proceedings in actions for rent, on payment of rent and costs.

The amended Act of 1865 appears to cover this exact case. The citation from Taylor, (§713, Land. & T.,) has reference to statutes which contain no provision for forfeitures. The act includes not only void, but *voidable* leases, for it provides a mode for canceling the lease and annulling the relation of landlord and tenant. Nor is a resort to these summary proceedings inconsistent with an action for damages, although an action brought under *either* of these statutes, during the term of the lease, would affirm the tenancy to the date of the alleged act of forfeiture. [Sargent *vs.* Smith, 12 Gray, 426 ; Stuyvesant *vs.* Davis, 9 Paige, 427.]

It is a general rule, where the common law prevails, that a statute remedy is merely cumulative, unless the common law remedy is expressly or impliedly repealed. [Coffin *vs.* Field, 7 Cush., 358 ; Brown *vs.* Castles, 11 *Ib.*, 3 and 8 ; Burden *vs.* Crocker, 10 Pick., 383 ; Colden *vs.* Eldred, 15 Mass., 22 ; Rex *vs.* Jackson, Cowp., 277 ; Yorke *vs.* Chapman, 10 Ad. and E., 209 ; Adams *vs.* Richardson, 43 N. H., 212 ; Wood *vs.* U. S., 16 Pet., 363 ; Shaftesbury *vs.* Russell, 1 B. and C., 66.] But if a statute confers a right, and an adequate means of protecting it, the statutory remedy is exclusive, and if the enforcing tribunal is specified, that, alone, can be resorted to. [Wiley *vs.* Yale, 1 Met., 557 ; Tower *vs.* City of Boston, 10 Cush., 235 ; Hazen *vs.* Essex Co., 12 Cush., 477 ; Flagg *vs.* City of Worcester, 13 Gray, 601.] The case of Comth. *vs.* Johnson, 8 Mass., 90, was thus : By a statute of 1791, inferior courts had jurisdiction of a certain grade of offences ; a subsequent statute gave the Supreme Court jurisdiction "of every crime whatsoever that is against the public

good." The Court there, referring to the English rule, that only by express negative words or necessary implication, would the higher Court lose jurisdiction, said, "words similar to these have, in this State, by a long-continued, unbroken series of precedents and practice, been uniformly construed to exclude the original jurisdiction of this Court." But in Comth. *vs.* Hudson, 11 Gray, 64, Shaw, C. J., said, "It is no answer to say that another tribunal has jurisdiction; for that is common. It is, in such case, concurrent jurisdiction, whether so called in the statute or not," there being "no words indicating that it should be exclusive, nor repealing any specific statute."

In Williams *vs.* Potter, 2 Bar., 316, it was held that landlords' remedies under a statute in force when the lease was executed, were not affected by the requirements of a subsequent statute, unless in respect of re-entry for non-payment of rent.

In Rochester *vs.* Rehoboth, 9 Fos., 367, the Court said, "But we have never held that because a justice of the peace may entertain jurisdiction to the extent of $13.33, the Common Pleas are thereby ousted of jurisdiction of all matters below that sum, but unless the statute confine the original jurisdiction to a magistrate, our practice has been to permit a party to bring his suit in the Common Pleas, if he so choose, but at the risk of having his costs limited to those recoverable before a justice of the peace. In Flanders *vs.* Atkinson, 18 N. H., the same Court declined original jurisdiction of matters cognizable in a lower Court. These decisions, however, generally rest on statute or constitutional limitations. This Court has jurisdiction "of all cases in law or equity, * * whether the same be brought before it by original writ, by appeal, or otherwise." Civil Code, Section 829. The Police Justice has exclusive original jurisdiction, where the amount shall not exceed two hundred dollars. Civil Code, Section 893; amended by Act, 1868. That

amount is to be ascertained by the *ad damnum* laid in the complaint, and not by the actual amount of the debt or damages. [Hapgood *vs.* Doherty, 8 Gray, 373.] The *ad damnum* in this case was one thousand dollars, although the evidence would entitle the plaintiff, if he recovered, to merely nominal damages. [Appleton *vs.* Fuller, 1 Gray, 186.] The costs would be regulated by the Court, if the defendant appeared to be unnecessarily subjected to more expensive proceedings. Perhaps the plaintiff's claim for mesne profits might be affected by not resorting to summary proceedings for an earlier decision. In view of this protection against expense or delay, we are of the opinion that, by the authorities, this action would lie, and that evidence of actual damage is not requisite.

Was notice to quit essential? Our statutes are silent upon this point, except in requiring ten days' notice to terminate a tenancy by parole. By referring to cases brought in this Court, the uniform practice appears to have been, to give a written notice before bringing the action. But how long they should be, in what cases they may be dispensed with, or if required at all, has never been determined. Neither the English rule of a half-year's notice in determining tenancies from year to year, and of shorter notice for shorter terms, nor the statute regulations in the United States, have ever been formally adopted here. Undoubtedly, in tenancies determinable by the landlord's act or will, we should require a notice, reasonably definite and seasonable, before the tenant would be compelled to deliver up the premises.

If a tenant from year to year forfeit his lease by subletting, it was held that no notice to quit is required before bringing the action. "The landlord's action would be against a trespasser, as much so as if no relation had ever existed between them." [Willison *vs.* Watkins, 3 Pet., 48.]

If a tenant at will, or sufferance, do acts inconsistent with his tenure, the lessor may sue him as a disseisor, without

entry or notice, and may maintain an action of tort, as if he had originally entered by wrong. [Russell *vs.* Fabyan, 34 N. H., 223.]

This lease, however, was voidable only at the lessor's option, and if an actual entry be not made, some notice was due, that he intended to take advantage of the alleged breach of condition. The notice should be precise enough to admonish the lessee that forfeiture was claimed for condition broken. [Willard *vs.* Henry, 2 N. H., 122; Sperry *vs.* Sperry, 8 N. H., 481.]

We regard the plaintiff's objection to the admission of McGrew, and his refusal of rent on that score, as sufficient notice.

Finally, was the lease forfeited? The original term of two years expired September 30th, 1867. The lease provides that "it is to be at the option of the lessee, to continue to occupy, for a further term of three years, at the same rental." There was no renewal of the lease, but the lessee continued in occupation. If the tenant hold over without any new agreement, he holds upon the same rent as under his lease. [Rigge *vs.* Bell, 5 Term, 471.]

The right of option to take a new lease need not be exercised during the original term. [Moss *vs.* Barton, 1 Eng. Eq., 477, 1866.] And during subsequent occupation, the tenancy is from year to year. [Buckland *vs.* Papillion, 1 Eng. Ch. Appeal Cases, 67.]

But an agreement for extension not providing for the rent or length of term, might be held void for uncertainty. [Duffield *vs.* Whitlock, 26 Wend., 56.]

*All* the original covenants are not necessarily part of the lease for the additional term, unless so stipulated. [Rutgers *vs.* Hunter, 6 Johns. Ch., 215.]

This agreement provides only for the same rent. The tenant may always sub-let, unless otherwise agreed. A covenant against sub-letting is not one of the *usual* covenants, which

could be required for a valid lease. [Church *vs.* Brown, 15 Ves., 258.]

Until a new lease is executed, the defendant holds the premises, subject only to the rent provided for by the agreement in the first lease. [Kelso *vs.* Kelly, 1 Daly, 419; 7 Abb. N. Y. Dig., 420.]

The point, however, was not raised in the argument, and it is unnecessary to decide here whether the present occupation, until a new lease or formal extension, is subject to the condition against sub-letting. But we are of the opinion that the act of the defendant in allowing Dr. McGrew to occupy the building with himself, is not a breach of such condition. The original lease gave the free and unmolested use of the demised land, with the privilege of removing the buildings that the lessee might erect. This implies an unrestricted use of such buildings for all lawful purposes. It was long since settled, that a covenant not to sub-let a tenement was not broken by taking lodgers, although they have exclusive possession of a room for a year or more. [Doe dem. Pitt, *vs.* Lanning, 1 R. and M., 36.]

A clause like this is always strictly construed; so that it may not extend beyond the express stipulation; and particularly so, in order to avoid a forfeiture. [Doe *vs.* Carter, 8 Term, 57.]

Whether the defendant occupy exclusively the building which he erects, and has the right to remove, or not, can not affect the value of the lot itself. To restrict the defendant to such exclusive use and occupation of his own buildings, would seem inconsistent with the terms of the lease, and we do not think it was so intended.

Exceptions overruled.