HAWAIIAN ELECTRIC COMPANY, INC., a Hawaii corporation, Plaintiff-Appellee, *v.* CLARENCE DeSANTOS; JAMES L. McCLISH and MRS. JAMES McCLISH; DIANA JONES and RICHARD JONES; CAROLINE BRIGHT; LEIALOHA KALUHIWA and JERRY KALUHIWA; ALFRED FERREIRA and JUSTINE FERREIRA; SANDRA MENZA and ANTONE MENZA, JR.; MOSES ROBELLO, JR., and MARIE ROBELLO; JAMES R. SANDERS and ALBERTA SANDERS; HERBERT SANTOS; HANNAH VIRITUA; TU VIRITUA; MELVIN FISHER; and NELSON GOO, Defendants-Appellants, and JOSEPH R. SANCHEZ; ANTONE CALDEIRA; ANTHONY DeSANTOS; JAMES DeSANTOS; PAT CAIN; WILLIAM ESPINDOLA; BURERT T. RANKIN; MARTHA RANKIN; FRANK ANDRADE; DANIEL K. BRIGHT; HENRY C. CRUZ; ANTONE MENZSA; DELPHINE MENZSA; JANE ROBELLO, Defendants

NO. 6490

DECEMBER 31, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM, NAKAMURA, JJ.

## OPINION OF THE COURT BY LUM, J.

This is an appeal from orders of the circuit court granting summary judgment and writs of possession to plaintiff-appellee Hawaiian Electric Company (HECO), evicting defendants-appellants, twenty-one residents (residents) from HECO's property in Heeia Kea Valley, Kaneohe, Oahu. We reverse both orders because improper notice was given to terminate the tenancies between HECO and the residents. In so doing, we do not reach any of the other issues raised in this appeal, and similarly raised in the appeal of *Jones v. Hawaiian Electric Company* (No. 6433), which was argued before this court and was taken under advisement.

### I.

In 1975 HECO filed for summary possession against each resident. These cases were consolidated by the district court. Because jury trial was demanded by the residents, the cases were committed to the circuit court. HECO then filed a motion for summary judgment and for the issuance of writs of possession.

Before the circuit court ruled on the motion, a complaint[1] was filed with the Public Utilities Commission of the State of Hawaii (PUC). The complaint alleged, *inter alia*, that HECO's acquisition of the Heeia Kea Valley property was a violation of its franchise to do business as a public utility, and that HECO's acquisition of the Heeia Kea Valley property under a lease-purchase agreement in 1965 with Bishop Estate required approval of the PUC and was in violation of statutes over which the PUC had jurisdiction.

The PUC thereafter ruled (Order No. 4412) in favor of HECO, finding no statutory violation by HECO and no violation by HECO of its franchise to do business as a public utility in its purchase of the property.

On the basis of the PUC decision, the circuit court determined that HECO was entitled to claim possession of the property. The circuit court resolved all other issues against the residents, and the court ruled that HECO was entitled to possession as a matter of law.

---

[1] This complaint was brought by seven complainants, six of whom are residents involved in this appeal.

## II.

We concern ourselves with the singular issue of whether proper notice of termination was given by HECO to the residents under the Residential Landlord-Tenant Code (Code), chapter 521, Hawaii Revised Statutes. Because we rule that HECO failed to comply with the notice requirement of the Code, we do not deem it necessary to determine any of the other issues raised on appeal; we await *Jones v. Hawaiian Electric Company* to determine these issues.[2]

The lease-purchase agreement between HECO and Bishop Estate in 1965 assigned to HECO all of the existing tenancies encumbering the property upon the following condition:

The Tenancy shall begin as of October 1, 1957, and shall run for six (6) months and shall continue thereafter subject to termination by either party on not less than six (6) months' written notice;

So far as we can determine from the record, only two of the residents — Caroline Bright and James R. Sanders — hold under the original tenancies assigned to HECO.[3]

Of the remaining residents, who are successor tenants without the benefit of any lease agreement with HECO, we hold that § 521-22 of the Code is applicable:

[§ 521-22] *Term of rental agreement.* The landlord and tenant may agree in writing to any period as the term of the rental agreement. *In the absence of such agreement, the tenancy shall be month to month* or, in the case of boarders, week to week. [L 1972, c 132, pt of § 1] (Emphasis added.)

HRS § 521-71(a) is specific about notice requirements for evicting month-to-month tenants when the landlord contemplates demolition of the dwelling units. This section provides:

§ 521-71 *Termination of tenancy; landlord's remedies for holdover*

---

[2] Among the issues raised in this appeal and in *Jones v. Hawaiian Electric Company* are: (1) whether HECO violated its franchise agreement when it entered into a lease-purchase agreement with Bishop Estate without PUC approval; (2) whether HECO violated its franchise by purchasing property which was not utilized for utility purposes; (3) whether HECO violated its franchise agreement by continuing to hold on to the property for eleven years; and (4) whether the lease-purchase agreement violated HRS § 269-17 and § 269-19.

[3] Although not made an issue in this appeal, obviously termination of their tenancies is covered by their respective lease agreements.

*tenants.* (a) When the tenancy is month to month, the landlord or the tenant may terminate the rental agreement upon his notifying the other at least twenty-eight days in advance of the anticipated termination or *in cases of voluntary demolition of the dwelling units, ninety days in advance of the anticipated demolition. If notice is revoked or amended and re-issued, the ninety day period shall begin from the date it was re-issued or amended.* (Emphasis added.)

§ 521-71(a) requires 90 days notice to terminate these tenancies on account of voluntary demolition. Can we conclude from the record that HECO gave the required notice?

In *Lau v. Bautista*, 61 Haw. 144, 148, 598 P.2d 161, 164 (1979), we dealt with the notice requirements of HRS § 521-71(a), and we stated that "[t]he sufficiency of a notice must be judged within its four corners."

HECO contends that their notice of April 15, 1975, stating their intent to demolish the houses, satisfied the 90 days notice requirement of HRS § 521-71(a). The residents contend that HECO's letter of April 15, 1975, when read in combination with HECO's letters of May 19, 1975[4] and July 2, 1975, did not constitute sufficient notice.

It is undisputed that HECO sent the residents a letter, dated April 15, 1975, indicating its intent to demolish the premises and giving the tenants 90 days to vacate the premises. The letter stated in pertinent part:

> This is to inform you that your tenancy of the above referenced land at Heeia Kea will be terminated effective 90 days from date of your receipt of this letter.
>
> .   .   .   .   .
>
> Recent re-surveys indicate that conditions have deteriorated even further and that a clear violation of paragraphs 5 and 6 of the original Bishop Estate tenancy agreement exists. Under the Landlord-Tenant Code which became effective January 1, 1973, we became directly liable to comply with all City codes (and therefore could no longer pass that duty by lease agreement to you, as tenants). It is therefore necessary to remove the violations

---

[4] The second letter is not dated. However, the record shows that the approximate date was May 19, 1975, and for purposes of discussion a date of May 19, 1975 will be used.

by tearing down all structures because bringing them up to standard is not feasible.

. . . .

Shortly after the letter of April 15, 1975 was sent to the residents, the President of HECO agreed to postpone the termination date from July 15 to August 1, 1975. The President sent the following letter to the appellants:

TO THE RESIDENTS OF HEEIA KEA .

It is agreed that I will postpone the eviction notice of July 15 to August 1 on the basis that all of the residents of Heeia Kea will submit and sign a proposal to Hawaiian Electric Company by June 9 agreeing to maintain their homes in a condition to meet all building codes and to hold Hawaiian Electric Company harmless.

The Company and residents will meet and negotiate over the terms of the residents' plan and reduce the plan to a legal agreement that will be signed by all residents and the Company.

Then, on July 2, 1975 HECO wrote a letter to the residents which contained the following statements:

After meeting with representatives of Heeia Kea tenants and thoroughly exploring legal possibilities of continued occupancy of the dwellings at Heeia Kea, we have found that we have no alternative but to terminate your tenancy as outlined in our letter to you dated April 15, 1975.

The Law [§ 521-42(a)(1), Hawaii Revised Statutes] requires the landlord to comply with all applicable provisions of any State or County law, code, ordinance or regulation. Under this law, HECO is unable to transfer to you its responsibility as a landlord by entering into any agreement for you to bring the dwelling up to standard.

. . . .

In this letter of July 2 HECO attempted to reinstate the date for termination of the tenancies which had been announced in the April 15 letter. However, the second notice sent to the residents and signed by the President of HECO modified the 90-day notice of the April 15 letter by its agreement to "postpone the eviction notice of

July 15 to August 1. . . ." This second letter therefore had the effect of "re-issuing" or "amending" the 90-day notice of April 15. In line with the provisions of HRS § 521-71(a) HECO was obligated to give 90-day notice beginning from the date the notice was re-issued or amended; HECO was obligated to give 90-day notice beginning on May 19, 1975.

As early as 1869 this court, in *Brewer v. Chase*, 3 Haw. 127, 138 (1869), acknowledged a basic precept of Anglo-American jurisprudence, and stated:

> Undoubtedly, in tenancies determinable by the landlord's act or will, we should require a notice, reasonably definite and seasonable, before the tenant would be compelled to deliver up the premises.

To effect the termination of a lease, technical accuracy in the wording of a notice is not required but the notice must be so certain that it cannot be reasonably misunderstood. *Torrey v. Adams*, 254 Mass. 22, 149 N.E. 618 (1925). Such certainty is required with respect to the fixation of the day for the termination of the lease and the quitting of the premises.

HECO, however, argues that all of the residents except the two who hold as original tenants of Bishop Estate, are trespassers without right and under HRS § 666-1[5] the landlord is entitled to summary possession on ten days notice.

We disagree. HECO is estopped from arguing that these residents hold possession of their properties without right. HECO had been accepting rent and tax payments from these tenants for more than ten years when it filed for summary possession against each resident. *See Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.*, 58 Haw. 606, 575 P.2d 869 (1978); *Gonsalves v. Gilbert*, 44 Haw. 543, 356 P.2d 379 (1960); *Kanakanui v. DeFries*, 21 Haw. 123 (1912).

HECO's other argument for applying HRS § 666-1 is that the premises are in a state of disrepair in violation of the original leases

---

[5] § 666-1 *Summary possession on termination or forfeiture of lease.* Whenever any lessee or tenant of any lands or tenements, or any person holding under the lessee or tenant, holds possession of lands or tenements without right, after the termination of the tenancy, either by passage of time or by reason of any forfeiture, under the conditions or covenants in a lease, or, if a tenant by parol, by a notice to quit of at least ten days, the person entitled to the premises may be restored to the possession thereof in manner hereinafter provided.

which gives the landlord the right to evict under § 661-1. We again disagree. The landlord's remedies against his tenant for failure of the tenant to maintain the dwelling unit are governed by chapter 521 of the Code. Any conflict between chapter 666 and chapter 521 is controlled by the latter. *See* § 521-3(b). We have determined that HRS § 521-71(a) controls this fact situation in view of HECO's anticipated demolition of the dwelling units; chapter 521 therefore controls these termination proceedings.

Accordingly, we hold that HECO failed to give the required 90-day notice to the residents under the Code.

Reversed.

*Kathleen A. Dashiell,* Legal Aid Society of Hawaii, for defendants-appellants.

*Wesley W. Ichida (William W. L. Yuen* and *Patricia Blyth* with him on the brief, *Case, Kay, Clause & Lynch* of counsel), for plaintiff-appellee.