**JETZ SERVICE COMPANY, INC., Appellant,**

v.

**Louise B. CHAMBERLAIN, Respondent.**

**No. WD 43724.**

Missouri Court of Appeals, Western District.

July 16, 1991.

Ronald G. Byers, James O. Swaney, Jr., Newhouse, Byers & Swaney, P.C., Independence, for appellant.

Dale K. Irwin, Slough, Connealy, Irwin & Madden, Kansas City, for respondent.

Before KENNEDY, P.J., and SHANGLER and ULRICH, JJ.

ULRICH, Judge.

Jetz Service Company, Inc., (Jetz) appeals the trial court's judgment in favor of Louise Chamberlain entered following a bench trial. Jetz sued Ms. Chamberlain claiming she breached a lease agreement that provided for the installation and maintenance of laundry equipment at an apartment building owned by Ms. Chamberlain. On appeal, Jetz contends that the trial court erred by (1) failing to, *sua sponte*, disqualify itself due to prejudice; (2) determining that Ms. Chamberlain had properly canceled the lease; and (3) receiving into evidence without sufficient foundation a letter Ms. Chamberlain allegedly sent to Jetz. The judgment is affirmed.

Jetz entered into a five-year lease with the owner of The Royal Apartments, a twenty-two unit apartment complex located in Kansas City, Missouri. Pursuant to the agreement, the owner of The Royal Apartments permitted Jetz to install and maintain coin-operated laundry equipment for use by the apartments' residents. In return, Jetz was obligated to pay the owner fifty percent of all receipts from the coin-operated laundry machines.

The lease agreement also contained an automatic renewal clause. The automatic renewal clause provided as follows:

This agreement shall be automatically renewed for the same period of time unless canceled in writing by either party, sixty days prior to its expiration.

The original lease was effective March 20, 1982. According to the terms of the lease,

the automatic renewal clause would become effective March 20, 1987.

Louise Chamberlain signed a contract to purchase The Royal Apartments on February 6, 1986. Pursuant to the purchase contract, the seller was obligated to provide Ms. Chamberlain copies of all property leases and agreements pertaining to The Royal Apartments within seven days after the contract was signed. Ms. Chamberlain became the owner of The Royal Apartments by a warranty deed dated February 27, 1986.

Ms. Chamberlain purportedly sent a letter dated January 10, 1987, to Jetz in an effort to notify the company that she intended to replace its laundry service. The January 10, 1987, letter stated in part:

> This is notice that I will be replacing your laundry services at 3240–44 Harrison. If your machines are left at this location, it is done so on a day-to-day agreement. If you cannot agree to these conditions, please notify me so your machines can be removed.

Ms. Chamberlain offered into evidence at trial the letter as exhibit 15, and Jetz's attorney stated he had "no objection."

On September 24, 1987, Ms. Chamberlain entered into a new lease agreement for coin-operated laundry equipment at The Royal Apartments with Macke Laundry Service. On October 23, 1987, Ms. Chamberlain informed Jetz of the new agreement with Macke and told Jetz that its equipment should be removed by October 28, 1987, or the equipment would be disconnected. On October 28, 1987, an employee of Jetz discovered that the company's laundry equipment at The Royal Apartments had been disconnected.

Jetz filed suit against Ms. Chamberlain alleging that she breached the parties' lease and sought specific performance or monetary damages. Following the bench trial, the court addressed the attorneys and parties in open court. During this exchange, the court stated to the parties as follows:

> I think the parties should be advised that most Courts including this one find automatic renewals in leases, especially for extended periods, in this instance, five years are looked at with a great deal of repugnancy because there is no overt action to put that obligation for a five-year term into effect; and if there's any basis not to enforce them, they will never be enforced. I would advise you now that they are not good clauses to rely on. You will be well advised to make some effort to bring to the attention of the party the renewal.

The court then pronounced judgment in favor of Ms. Chamberlain.

■ For point (1), Jetz contends that the trial court erred in failing to, *sua sponte*, disqualify itself from this case. Jetz contends that the trial court's statement, set forth above, reflects the trial court's prejudice against Jetz. Jetz claims that it was denied a fair trial because the trial court was prejudiced.

■ Missouri courts are very protective of the notion that parties are entitled to an impartial arbiter. *See State v. Lovelady*, 691 S.W.2d 364, 365 (Mo.App.1985). The law is concerned not only with the judge's actual impartiality but also the public's perception of the judge's impartiality. *Id.* "Where a judge's freedom from bias or his prejudgment of an issue is called into question, the inquiry is no longer whether he actually is prejudiced; the inquiry is whether an onlooker might on the basis of objective facts reasonably question whether he was so." *Id.* Additionally, the trial judge's duty to recuse himself when impropriety or the appearance of impropriety exists does not depend on waiver of that issue by the parties. *See State ex rel. Division of Family Services v. Oatsvall*, 612 S.W.2d 447, 452 (Mo.App.1981); *Ham v. Wenneker*, 609 S.W.2d 240, 241 (Mo.App. 1980).

However, not every prejudice presents legally sufficient grounds to disqualify a judge from his duty to hear a case. *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 697 (Mo.App.1990). The court in *Goeke* stated:

> If "lack of bias" or "impartiality" are defined to mean the total absence of pre-

conceptions in the mind of a judge, "then no one has ever had a fair trial and no one ever will. The human mind is no blank piece of paper." *In re J.P. Linahan, Inc.*, 138 F.2d 650, 651–52 (2nd Cir. 1943).

*Id.*

■ "Prejudice" that requires disqualifying a judge, "is the attitude of personal enmity towards the *party* or in favor of the adverse party to the other's detriment." *Id.* However, the trial judge's views or opinions regarding issues of law are not sufficient grounds for disqualifying the judge. *Id. See also Johnston v. Citizens Bank & Trust Co.*, 659 F.2d 865, 869 (8th Cir.1981); *Papa v. New Haven Federation of Teachers*, 186 Conn. 725, 444 A.2d 196, 205 (1982); *In re Grblny's Estate*, 147 Neb. 117, 22 N.W.2d 488, 495 (1946). The court in *Capps v. Capps*, 715 S.W.2d 547 (Mo. App.1986), held:

> Of necessity, as a jury waived trial progresses, a trial judge must consider and possibly formulate tentative opinions concerning such matters as the probative value of certain testimony, the credibility of certain witnesses, what law should govern particular issues inherent in the trial, and finally must decide who, if anyone, is entitled to prevail therein on the law and the facts. In so doing he is exercising his judicial trial function, and although while so doing he may commit legal error or be mistaken as to his conclusions of law or fact, he is not as a result to be successfully charged with prejudice. . . .

*Id.* at 553 (*quoting Pippas v. Pippas*, 330 S.W.2d 132, 135 (Mo.App.1960)).

In the present case, the trial court's statement that most courts viewed leases with automatic renewal clauses "with a great deal of repugnancy" merely reflects an expression of the court's opinion regarding the law. Regardless of whether the court's opinion concerning the law is accurate, his opinion is not "prejudice" and not grounds for disqualification. Point (1) is denied.

For point (2) on appeal, Jetz contends the trial court erred in determining that Ms.

Chamberlain properly canceled the parties' lease. In particular, Jetz claims that at trial Ms. Chamberlain failed to provide a sufficient foundation to create a legal presumption that it received exhibit 15, the letter of cancellation purportedly sent to Jetz on January 10, 1987. Jetz also claims that exhibit 15 is vague and equivocal and, therefore, insufficient to constitute a valid cancellation of the parties' lease. Finally, Jetz argues that its undisputed evidence overcame any presumption that it received exhibit 15.

■ At oral argument before this court, Jetz conceded that the issue of whether Ms. Chamberlain presented a proper foundation to create a legal presumption that exhibit 15 was received is controlled by *Hills v. McComas Rentals, Inc.*, 779 S.W.2d 297 (Mo.App.1989). In *Hills*, a terminated employee of McComas Rentals, Inc., sued the company alleging it failed to provide a service letter as required by § 290.140, RSMo 1986. *Id.* at 298. An employee of McComas testified that the service letter was mailed to Hills. *Id.* When McComas sought to introduce the service letter into evidence, Hills' attorney stated he had "no objection." *Id.* at 300. On review, the court stated:

> [T]he defense counsel asked to introduce the letter into evidence, and plaintiff's attorney stated he had no objection. By so doing he stipulated as to its content. Therefore, although an insufficient foundation was laid for the introduction of the . . . letter, we find that a purported service letter was sent.

*Id.* Similarly, Jetz's attorney stated he had "no objection" to the introduction of exhibit 15 at trial. Therefore, exhibit 15 raises a presumption that Ms. Chamberlain properly sent the letter and it was received by Jetz.

■ Jetz further contends that exhibit 15 is vague and equivocal and, therefore, insufficient to constitute a valid cancellation of the parties' lease. The applicable rule pertaining to the sufficiency of notices to cancel leases was announced in *National Alfalfa Dehydrating & Milling Co. v. 4010 Washington, Inc.*, 434 S.W.2d 757

(Mo.App.1968). In *National Alfalfa*, the court stated, "the rule is that a notice to terminate pursuant to a cancellation provision contained in the lease must be so certain that it cannot be reasonably misunderstood...." *Id.* at 762. See also *Hawaiian Electric Co. v. De Santos*, 63 Hawaii 110, 621 P.2d 971, 975 (1980). The Hawaii Supreme Court held in *De Santos*, "[t]o effect the termination of a lease, technical accuracy in the wording of a notice is not required but the notice must be so certain that it cannot be reasonably misunderstood." *Id.*

In the present case, Ms. Chamberlain's letter dated January 10, 1987, stated, "This is notice that I will be replacing your laundry service at 3240–44 Harrison." This statement is so certain it cannot be reasonably misunderstood as anything but a notice canceling the lease for laundry services at The Royal Apartments. The trial court did not err in determining that exhibit 15 sufficiently notified Jetz of Ms. Chamberlain's intent to cancel the parties' lease.

■ Finally, Jetz contends that its undisputed evidence overcame any presumption that it received exhibit 15. Jetz's "undisputed evidence" consists of testimony denying that exhibit 15 was actually received. However, once a presumption of receipt is established, "proof to the contrary when offered creates an issue for the trier of fact." *Hills*, 779 S.W.2d at 300. In the present case, the trial court's resolution of this conflicting evidence, finding that Jetz received the cancellation letter, is supported by substantial evidence, is not against the overwhelming weight of the evidence and properly applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Point (2) is denied.

■ For point (3), Jetz contends that the trial court erred in admitting into evidence exhibit 16, a letter Ms. Chamberlain purportedly sent to Jetz on September 17, 1987. In exhibit 16, Ms. Chamberlain references her prior letter sent on January 10, 1987, and states that she will notify Jetz of the date by which its machines should be removed from The Royal Apartments. At trial, Jetz's attorney objected to the introduction of exhibit 16. The trial court permitted the introduction of exhibit 16 into evidence over Jetz's objection. On appeal, Jetz contends that the trial court erred in admitting this letter into evidence because Ms. Chamberlain failed to establish a foundation showing that exhibit 16 was properly mailed and thus failed to raise a legal presumption of receipt pursuant to *Hills v. McComas Rentals, Inc.*, 779 S.W.2d 297 (Mo.App.1989).

■ However, the trial court's admission of improper evidence is not ordinarily grounds for reversal in a nonjury case, particularly where the improper evidence does not appear to have played a critical role in the court's decision. *Yates v. Yates*, 776 S.W.2d 46, 47 (Mo.App.1989). Assuming, arguendo, that exhibit 16 was erroneously admitted, reversal is not mandated. Missouri law provides that, "even though evidence is admitted improperly, when other competent evidence supports a judgment in a court-tried case such as this, or an equity case, harmless error results." *In re Estate of English*, 691 S.W.2d 485, 489 (Mo.App.1985) (*quoting Pelligreen v. Century Furniture & Appliance Co.*, 524 S.W.2d 168, 170 (Mo.App.1975)). In the present case, the trial court determined that the parties' lease was properly canceled on January 10, 1987, the date exhibit 15 was sent to Jetz. This determination is supported by substantial evidence and exhibit 16, sent some eight months after Ms. Chamberlain canceled the parties' lease, did not play a critical role in this determination. Point (3) is denied.

The trial court's judgment in favor of Ms. Chamberlain is affirmed.

All concur.