HILTON HOTELS CORPORATION, Member of and Agent for Hilton Hawaiian Village, LLC, formerly known as Hilton Hawaiian Village Joint Venture, Plaintiff-Appellee,
v.
EUGENIE PARNAR, Defendant-Appellant
No. 27056
In the Intermediate Court of Appeals of Hawaii.
January 22, 2008.
Emlyn H. Higa, for Defendant-Appellant Presiding Judge
Sharon V. Lovejoy, Lane Hcrnfeck McKay, and Wil K. Yamamoto,
(Starn O'Toole Marcus & Fisher) for Plaint Appellee.

SUMMARY DISPOSITION ORDER
FOLEY, Acting C.J., NAKAMURA and FUISE, JJ.
Defendant-Appellant Eugenie Parnar (Parnar) appeals from the December 15, 2004 Judgment for Possession and December 15, 2004 Writ of Possession entered by the District Court of the First Circuit (district court)[1] in favor of Plaintiff-Appellee Hilton Hotels Corporation (Hilton) and the January 10, 2005 oral denial of her motion for new trial.[2]
Parnar raises two points on appeal: The first claims error because the district court failed to take Hilton's Exhibit 35 into account in rendering its findings of fact; the second[3] alleges the district court erred in failing to treat Parnar's Hawaii Rules of Civil Procedure (HRCP) Rule 59 motion for new trial as a HRCP Rule 60(b) (4) motion for relief from judgment, in failing to grant the motion and in failing to vacate the judgment previously entered. After a careful review of the points raised, arguments made, authority cited and the record in this case, we disagree with Parnar and affirm.
The uncontested facts as found by the district court are that Hilton and Parnar signed a rental agreement on December 15, 1991, for a unit in the Diamond Head Apartments complex, wherein Parnar agreed to pay $799.00 per month in rent. Upon the expiration of this rental agreement on May 31, 1992, as provided by this agreement, Parnar became a month-to-month tenant. On March 23, 1992 and June 13, 1992, Hilton notified Parnar that her monthly rent would increase to $900. However, Parnar continued to pay only $799 towards her rent. Through a letter dated May 6, 2004,[4] Hilton terminated Parnar's month-to-month tenancy effective June 20, 2004. The same letter gave Parnar forty-five days from May 6, 2004 to vacate the apartment. We note that the forty-fifth day after May 6, 2004, was June 20, 2004.
In addition to the foregoing findings of fact, the record reflects that Hilton sent Parnar another letter, dated July 22, 2004,[5] reiterating its position that Parnar's tenancy had been terminated as of June 20, 2004, but expressed a continued willingness to execute another lease "previously provided,"[6] but that Parnar was not willing to do so and she did net vacate the apartment by August 5, 2004, Hilton would take legal action to regain possession of the premises. On August 19, 2004, Hilton filed a complaint alleging that, inter alia, Parnar had broken their rental agreement by failing to pay $15,249.53 in rent, notice to correct this situation was given, in writing, on February 27, April 15, April 26, May 6 and July 22, 2004, and despite these notices, Parnar failed to correct "this situation and is still in possession of the property."
Trial was had on the issue of possession on November 29, 2004. The district court entered a judgment for possession and issued a writ of possession on December 15, 2004, and issued findings of fact and conclusions of law the following day.
Meanwhile, Parnar filed a motion for new trial on December 9, 2004, which was heard on January 10, 2005, and denied by order entered January 20, 2005. On January 10, 2005, Parnar filed her notice of appeal from the December 15, 2004 Judgment for Possession and Writ of Possession and the January 10, 2005 oral denial of her motion for new trial. The district court issued an Order Granting [Parnar's] Motion to Stay Judgment of Possession, Writ of Possession and to Establish Bond Pending Appeal on January 28, 2005.
Although Parnar parses her appeal into two points, they are both based on the argument that Hilton's notice of termination of her month-to-month tenancy was inadequate under Hawaii Revised Statutes (HRS) § 521-71 (Supp. 2004).[7] It is undisputed that Hilton's May 6, 2004 letter told Parnar that her month-to-month tenancy was terminated as of June 20, 2004 and that she had 45 days from May 6, 2004 to vacate the apartment. Thus, Hilton's notice complied with HRS § 521-71(a) as it gave Parnar 45 days notice of the termination of her tenancy and 45 days notice that she had to vacate the premises. As Hilton took no action, other than to reaffirm the June 20, 2004 termination date by letter dated June 9, 2004, before June 20, 2004, Parnar's tenancy was terminated as of that date.
Relying primarily on Hawaiian Elec. Co., Inc. v. DeSantos, 63 Haw. 110, 621 P.2d 971 (1980) and HRS § 521-71(a), Parnar argues that Hilton's July 22, 2004 letter constituted a new notice of termination that required the 45-day notice period to begin anew.
DeSantos involved the eviction of a number of holdover tenants for the purpose of demolishing the tenants' living quarters because they were deemed unsafe. Id. at 114-15, 621 P.2d at 974-75. The landlord issued valid notices of termination of the month-to-month tenancy under the Landlord-Tenant Code, but before the notice period had expired, the landlord sent a second letter to the tenants extending the deadline for two weeks, and in a third letter, purported to roll back the deadline to the original date. Id. The Plawal'i Supreme Court rejected this attempt at a rollback based on the express language of what was then HRS 521-71(a), now HRS § 521-71(c), that provided,
521-71 Termination of tenancy; landlord's remedies for holdover tenants. (a) When the tenancy is month to month, the landlord or the tenant may terminate the rental agreement upon his notifying the other at least twenty-eight days in advance of the anticipated termination or in cases of voluntary demolition of the dwelling units, ninety days in advance of the anticipated demolition. If notice is revoked or amended and re-issued, the ninety day period shall begin from the date it was re-issued or amended. (Emphasis added.)
DeSantos, 63 Haw. at 112-13, 621 P.2d at 974, and held that the landlord was required to give another 90-day notice period, counted from the date of the second letter.
DeSantos is inapposite for two reasons. First, it is an interpretation of the express provisions of what is now HRS § 521-71(c), which pertains to terminations for the purpose of, inter alia, demolition, and is not applicable here. HRS 521-71(a) which does apply here, has no such provision.
Second, unlike the landlord in DeSantos, Hilton issued no amendment to the termination date. Hilton's July 22, 2004 letter, upon which Parnar relies, was dated after the termination date and reaffirms that termination date. This letter plainly asked Parnar to vacate the apartment "immediately," and further warned that if she did not vacate or agree to the previously offered lease by August 5, 2004, Hilton would bring suit for possession and damages. This July 22, 2004 letter cannot fairly be read as amending the termination date. Parnar's argument that Hilton's offer of a new lease "must have intended to rescind its previous notice of termination, as well as the June 20, 2004 termination date" and her assertion that the setting of the August 5, 2004 deadline was a new notice of termination, is not supported by the evidence in this case nor the legal authority provided by Parnar.
The district court did not err in entering the judgment of possession or in denying Parnar's motion for a new trial.
Therefore,
IT IS HEREBY ORDERED that the District Court of the First Circuit's December 15, 2004 Judgment For Possession, December 15, 2004 Writ of Possession and the January 20, 2005 Order Denying Motion For New Trial are affirmed.
NOTES
[1] The Honorable Barbara P. Richardson presided.
[2] The written order deriving Defendant-Appellant Eugenie Parnar's (Parnar) motion for new trial was issued on January 20, 2005. See Hawai`i Rules of Appellate Procedure (HRAP) Rule 4(a)(2).
[3] Parnar's second point on appeal is in violation of HRAP Rule 28(b)(4) insofar as it fails to provide record citations directing this court's attention to where the error occurred and was objected to. Counsel is warned that further violations of the rules will result in sanctions.
[4] Plaintiff-Appellee Hilton Hotels Corporation's (Hilton) May 6, 2004 letter stated as follows:

As you know, you have not accepted the [Hilton's] offer of a one-year lease term at $1,300.00 per month, and you have not agreed to [Hilton's] request that you temporarily relocate to allow us to perform life safety installation/renovation to your apartment unit, both of which were communicated to you in writing on February 27, 2004, April 15, 2004, and April 26, 2004.
Accordingly, you are hereby given notice that your month-to-month tenancy in apartment unit 397 of the Diamond Head Apartments is terminated, effective June 20, 2004. You have forty-five (45) days from the date of this letter to vacate your apartment unit. If you fail to vacate your unit at that time, we will be forced to file a summary possession action against you.
In the event you vacate your unit early, please notify the Hilton Hawaiian Village Leasing Office so that we can properly prorate your rental amount.
In addition, your outstanding amount of past due rent totals $12,230.00. Please make arrangements to pay your past due rent immediately.
[5] Hilton's July 22, 2004 letter stated,

Thank you for your June 26, 2004 letter to Noel Trainor. With all due respect, we are unaware of any sexual harassment investigation involving or relating to you, or any promises that you would be permitted to stay in your apartment indefinitely, or of any promises that your rent would never be increased.
You had a one-year lease. When it expired, you became a month-to-month tenant (as the lease provided). Since then, you have refused to recognize proper rental increases, refused to allow us temporary access to your unit to perform life safety installation/renovations, and are no longer paying anything close to market rent. We therefore terminated your month-to-month tenancy effective June 20, 2004.
If you are interested in executing the new lease we previously provided, we welcome your continued residency at the Village. If not, please vacate your premises immediately. If you do not execute the new lease or vacate your premises by August 5, 2004, we will file a lawsuit to regain possession of the unit P397, recover back rent, and recover the costs and attorneys' fees that we incur in the lawsuit.
[6] Exhibit 22 in evidence is a letter dated February 27, 2004, from Hilton to Parnar, which stated, in pertinent part:

We have enclosed a New Rental Agreement for the unit 397 you currently occupy in Diamond Head Apartments at Hilton Hawaiian Village for the period May 1, 2004 to April 30, 2005.
Please carefully review the rental agreement and all the attachments. We could like you to note that the rent in the amount of $1,300.00 plus 4.166% Hawaii general excise tax for a total of $1,354.15 per month, which is to be paid by you to the Hilton Hawaiian Village.
[7] At the time Hilton sent its May 6, 2004 letter, Hawaii Revised Statutes § 521-71 (Supp. 2004) provided, in pertinent part,

§ 521-71. Termination of tenancy; landlord's remedies for holdover tenants. (a) When the tenancy is month-to-month, the landlord may terminate the rental agreement by notifying the tenant, in writing, at least forty-five days in advance of the anticipated termination. When the landlord provides notification of termination, the tenant may vacate at any time within the last forty-five days of the period between the notification and the termination date, but the tenant shall notify the landlord of the date the tenant will vacate the dwelling unit and shall pay a prorated rent for that period of occupation.
(b) When the tenancy is month-to-month the tenant may terminate the rental agreement by notifyine the landlord, in writing, at least twenty-eight days in advance of the anticipated termination. When the tenant provides notice of termination, the tenant shall be responsible for the payment of rent through the twenty-eighth day. (c) Before a landlord terminates a month-to-month tenancy where the landlord contemplates voluntary demolition of the dwelling units, conversion to a condominium property regime under chapter 514A, or changing the use of the building to transient vacation rentals, the landlord shall provide notice to the tenant at least one hundred twenty days in advance of the anticipated demolition or anticipated termination, and shall comply with the provisions relating to conversions provided in section 514A-105, if applicable. If notice is revoked or amended and reissued, the notice period shall begin from the date it was reissued or amended. Any notice provided, revoked, or amended and reissued shall be in writing. When the landlord provides notification of termination pursuant to this subsection, the tenant may vacate at any time within the one-hundred-twenty-day period between the notification and the termination date, but the tenant shall notify the landlord of the date the tenant will vacate the dwelling unit and shall pay a prorated rent for that period of occupation.